APOLINAR MONTERO SALDAÑA, demandante y recurrido, *v.* AMERICAN MOTORS CORPORATION, demandada y recurrente.

*Número:* R-77-203        *Resuelto:* 31 de mayo de 1978

454

*Amancio Arias Cestero, Amancio Arias Guardiola, Antonio Gnocchi Franco* y *Francisco J. Colón Pagán,* abogados de la American Motors Corporation; *Carlos E. Colón* y *Antonio J. Matta,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Apolinar Montero compró el 27 de marzo de 1973 un vehículo de motor "Jeep Willys" Modelo 1973, Motor Núm. J3M261-XA03916, a la Mayagüez Motors. El 7 de noviembre

de 1973 Montero utilizó el vehículo para ir a recoger café. Para llegar a donde estaba el café tenía que subir una larga y empinada pendiente. Antes de iniciar el ascenso engranó el refuerzo del "Jeep" poniendo a funcionar el mecanismo de tracción en las cuatro ruedas. Llegando al paraje donde estaba el café el vehículo botó la palanca de refuerzo. Montero trató de frenar al iniciar la marcha hacia atrás pero los frenos fallaron. Concluyó el tribunal de instancia que "aparentemente los frenos fallaron o al quedarse en neutro, por lo empinado de la cuesta y lo súbito que todo sucedió, su descenso no pudo ser detenido por el demandante y adquirió mayor velocidad y se fue por un barranco o risco con el demandante dentro de la cabina. Al caer por el barranco o risco el vehículo dio varias vueltas y fue a caer en el fondo del barranco destrozándose y causándole al demandante serias y graves lesiones corporales."

Para resarcirse Montero demandó a la Mayagüez Motors Corporation como vendedora del vehículo y a la American Motors Corporation—Jeep International Detroit Michigan— como fabricante. En cuanto a esta última alegó que "al comprar el vehículo lo hizo descansando, por ser un vehículo nuevo, en la garantía implícita de su fabricante . . . de que el mismo estaba correctamente fabricado y apto para el uso a que habría de ser destinado sin riesgos algunos por defectos de fábrica para aquellas personas que por compra o en alguna otra forma había [sic] de usarlo."

El tribunal de instancia declaró sin lugar la demanda contra Mayagüez Motors y responsabilizó a la American Motors Corp. como fabricante del vehículo. La defensa de la American Motors fue al efecto de que ella no había fabricado el "Jeep" comprado por el demandante; que ella adquirió la fábrica con posterioridad a la fecha en que Montero compró el vehículo y que "la garantía expedida por American Motors Corporation fue efectiva al primero de octubre de 1973", mientras que el vehículo en cuestión fue adquirido por el demandante el 27 de marzo de 1973. Accedimos a revisar.

Nueve errores apunta la recurrente. Sostiene que fue erróneo concluir que la American Motors Corporation fue la fabricante del vehículo envuelto en el accidente; que no hay base en la prueba para sostener que el accidente se debió a "falla mecánica por defecto de fábrica en el sistema en la transmisión de refuerzo (*four wheel drive*)", "que no procedía aplicar la doctrina de responsabilidad absoluta del fabricante enunciada en *Mendoza* v. *Cervecería Corona, Inc.*, 97 D.P.R. 499 (1969)"; y "al no considerar en su sentencia la negligencia inexcusable del demandante." Los otros apuntamientos se relacionan con la cuantía de los daños por incapacidad y sufrimientos, así como por ganancias dejadas de percibir. También apunta que no se hicieron las deducciones dispuestas por la Ley de Protección Social por Accidentes de Automóviles (9 L.P.R.A. sec. 2058); que se concedieron indebidamente intereses desde la radicación de la demanda; que los honorarios de abogado concedidos son excesivos y que no procedía conceder $1,500 por honorarios a un perito de la parte demandante. De inmediato pasamos a considerar los errores apuntados.

## I

Si examinamos las alegaciones radicadas encontramos alegado específicamente en el primer párrafo de la demanda "[q]ue la co-demandada, American Motors Corporation Jeep International Detroit Michigan, se demanda en su carácter de fabricante del vehículo de motor marca Jeep Willys, Pick Up modelo 1973; motor número J3M261-XA03916 . . . ." y al contestarla, se expresa que "[c]omparece la codemandada American Motors Corporation representada por sus abogados que suscriben y en contestación a la demanda niega lo alegado en los párrafos 3, 6 y 7 y niega lo alegado en los demás párrafos de la demanda por carecer de información suficiente para formar una opinión con respecto a la veracidad de lo allí alegado."

La Regla 6.2 de las de Procedimiento Civil dispone que "[l]a parte expondrá en términos suscintos y sencillos sus defensas contra cada reclamación interpuesta y admitirá o negará las aseveraciones en que descanse la parte contraria. Si no tuviere conocimiento o información suficiente para formar opinión en cuanto a la veracidad de alguna de las aseveraciones expuestas, lo hará así constar y ello tendría el efecto de una negación . . . ." Corresponde esta Regla a la 8(b) de las de Procedimiento para las Cortes Federales.

El recurrido alegó expresamente en su demanda que el vehículo envuelto en el accidente era un "Jeep Willys" Modelo 1973 con número de motor J3M261-XA03916 y que lo había fabricado la American Motors. Ciertamente si esto era cierto o no podía ser fácilmente comprobado por la codemandada American Motors. Tenía que ser de su conocimiento si ésta no había fabricado los "Jeeps Willys" de 1973 y específicamente uno con el número arriba indicado. Si había algún inconveniente debido a que la American Motors adquirió la fábrica de estos vehículos en determinada fecha, y no le era fácil constatar si el "Jeep" a que se hace referencia en la demanda fue fabricado con posterioridad a la fecha en que ésta adquirió la fábrica, ésta tuvo amplia oportunidad de verificarlo antes de contestar, pues fue emplazada el 5 de septiembre de 1974 y no fue hasta 5 meses después, el 12 de febrero de 1975, que radicó su contestación.

Al interpretar y comentar la regla correspondiente de la jurisdicción federal se ha sostenido que un demandado no puede fundar su negativa "en falta de conocimiento o información suficiente" si el hecho contenido en la alegación a negarse es de conocimiento público, o de fácil comprobación. Claro está, que si el hecho no puede constatarse en el término que tiene la parte para contestar, es adecuado negarlo por falta de conocimiento. Cuando le consta o pudiendo comprobar el hecho como en el presente caso, se niega en la forma que se hizo, procede no considerar la contestación y dar lo

así negado por admitido. Y es que la contestación a una demanda impone al abogado el deber de actuar franca y sinceramente, y de alegar honesta, directa y abiertamente. No se le requiere que la contestación sea jurada, pero esa misma dispensa impone al abogado mayor responsabilidad. Lo que aparezca bajo su firma debe ser la verdad. La negación por falta de información y creencia debe limitarse estrictamente a las situaciones en que en verdad así sea. A ese efecto expresó la Corte de Apelaciones para el Octavo Circuito en el caso de *Mesirow* v. *Duggan*, 240 F.2d 751, 756 (1957):

> "Ese era un asunto cuya constancia estaba bajo el control del apelado y particularmente era de su conocimiento, y bajo la ley y estas circunstancias, su contestación, expresando que 'carecía de conocimiento o información suficientes para formular una opinión' con referencia a ese asunto, no constituyó una negación de las alegaciones de la demanda a ese respecto, ni las puso en controversia, de ahí que a tenor con la ley esas alegaciones estén admitidas . . . ."

Ver además *Stuckey's Carriage Inn* v. *Phillips*, 178 S.E.2d 543, 551 (Ga. 1971); *Greenbaum* v. *United States*, 360 F.Supp. 784, 787–788 (D.C.E.D. Penn. 1973); *David* v. *Crompton & Knowles Corp.*, 58 F.R.D. 444, 446 (D.C.E.D. Penn. 1973); 2A Moore, *Federal Practice*, Secs. 8.21 y 8.22 (1975); 5 Wright & Miller, *Federal Practice & Procedure: Civil*, Sec. 1262 (1969).

En el presente caso se alegó directa y expresamente que la American Motors fabricó determinado vehículo el cual se identificó con su modelo y número de motor. Es conveniente señalar que la demandada negó expresamente otras alegaciones de la demanda, específicamente los párrafos 3, 6 y 7, pero el resto de los hechos alegados los negó por falta de información y creencia. Si no había fabricado el vehículo es un hecho que necesariamente tenía que saber por conocimiento propio y no procedía negarlo por falta de información y creencia.

■ Aparte de lo anterior, fundado en razones de política pública para la mayor protección del consumidor, se ha decidido que una corporación que adquiere los activos de otra es responsable, bajo la doctrina de responsabilidad absoluta, de los defectos que puedan tener los productos fabricados por la corporación adquirida. Con más razón debe responder la American Motors en el presente caso puesto que en los folletos y otros documentos de la corporación fabricante del vehículo envuelto en el accidente aparece el emblema de la American Motors. *Ray* v. *Alad Corp.*, 560 P.2d 3 (Cal. 1977); *Knapp* v. *North American Rockwell Corp.*, 506 F.2d 361 (3d Cir. 1974); *Cyr* v. *B. Offen & Co., Inc.*, 501 F.2d 1145 (1st Cir. 1974); Nota, *Products Liability Under the De Facto Merger Doctrine*, 49 Temp. L.Q. 1014 (1976); Barringer, *Successor Corporation's Products Liability*, 27 Hastings L.J. 1305, 1333 (1976).

## II

Pasamos ahora a considerar conjuntamente los planteamientos referentes a la responsabilidad impuesta a la demandada que son los números 3, 4 y 5. (¹)

Como hemos apuntado antes, el demandante compró el vehículo que dio margen a la acción interpuesta el 27 de marzo de 1973 y el accidente ocurrió el 7 de noviembre siguiente. Se estableció por la evidencia que nadie intervino

---

(¹) Error 3:

"Erró el Tribunal de instancia al aplicar a los hechos de este caso la doctrina de responsabilidad absoluta al invocar los casos de *Mendoza* v. *Cervecería Corona*, 97 D.P.R. 499 y *Ferrer Delgado* v. *General Motors Corporation*, 100 D.P.R. 246."

Error 4:

"Erró el Tribunal de instancia al no considerar en su sentencia la negligencia inexcusable del demandante."

Error 5:

"Erró el Tribunal de instancia al conceder la cuantiosa suma de $52,000.00 por las lesiones físicas, incapacidad resultante y los sufrimientos y angustias del demandante."

con el mecanismo de refuerzo del "Jeep" y que Montero notificó a la vendedora Mayagüez Motors del defecto. A ese efecto el tribunal concluyó que "[c]omo dos o tres semanas antes del accidente, el demandante fue informado por su empleado Wilson González que el vehículo le había botado el refuerzo. Ello motivó que el demandante fuera a Lares donde la vendedora y le informara al gerente Sr. Bonifacio Vélez, lo que su empleado le había informado a fin de que se corrigiera el defecto del sistema de refuerzo. Dicho gerente no le dio importancia a la [sic] informándole, manifestándole al demandante que tenía instrucciones de la Mayagüez Motors que esa clase de defecto tenía que ser corregido en Mayagüez, pero que podía continuar usando el vehículo hasta tanto él le pudiera conseguir un turno en Mayagüez. El accidente ocurrió poco tiempo después de esta conversación y antes de que se le notificara al demandante que se le había conseguido o separado turno."

El demandante presentó prueba pericial para demostrar que el mecanismo del refuerzo estaba defectuoso debido a la falta de tolerancia o posición de los muelles utilizados en el sistema de refuerzo, que era un sistema nuevo usado por primera vez en los "Jeeps" del año 1973 y que en ocasiones por este defecto el sistema total de transmisión quedaba en neutro súbitamente. La demandada presentó un perito el cual llevó a efecto en el tribunal unas pruebas para demostrar que los muelles se ajustaban a los requisitos mínimos. El tribunal consideró la prueba presentada y determinó que el mecanismo estaba defectuoso, conclusión sostenida por el perito presentado por el demandante. Considerando esta prueba el tribunal declaró con lugar la demanda invocando la doctrina de la responsabilidad absoluta del fabricante.

En *Mendoza* v. *Cervecería Corona*, 97 D.P.R. 499 (1969), hicimos referencia a un caso resuelto por la Corte Suprema de Nueva Jersey, *Henningsen* v. *Bloomfield Motors, Inc.*, 161 A.2d 69 (1960), donde se aplicó la doctrina de responsabili-

dad absoluta a los fabricantes de automóviles, dictamen que ha sido seguido por la generalidad de las jurisdicciones estadounidenses. De hecho en *National Car Rental* v. *Caribe Motors*, 104 D.P.R. 74 (1975), invocamos la autoridad de *Mendoza* e impusimos responsabilidad en un caso relacionado con la responsabilidad del vendedor por un incendio surgido en el panel de instrumentos de un vehículo nuevo que le ocasionó daños ascendentes a $1,500.

En *Greenman* v. *Yuba Power Products, Inc.*, 377 P.2d 897, 900 (Cal. 1962) citado con aprobación en *Mendoza*, se estableció por la Corte Suprema de California que "[u]n fabricante responde absolutamente en daños y perjuicios cuando un artículo que pone en el mercado, a sabiendas de que va a ser usado sin una inspección de defectos, evidencia un defecto que ocasiona daños a un ser humano" y que "[l]a responsabilidad no es una regida por la ley de garantías contractuales sino por la ley de responsabilidad absoluta en daños y perjuicios". Como consignamos en *Mendoza*, citando de *Greenman:* "[e]l propósito de tal responsabilidad es asegurar que el costo de los daños resultantes de los productos defectuosos sean sufragados por los fabricantes que enviaron tales productos al mercado en vez de las personas damnificadas que están impotentes para protegerse ellas mismas."

El defecto de que adolece el producto no tiene que ser uno "irrazonablemente peligroso al consumidor o comprador" como se expresa en la Sec. 402A (1965) del *Restatement of Torts*.(²) En *Mendoza* en el escolio 7 que aparece a la pág. 512

---

(²) Lee así la Sec. 402A del *Restatement of Torts* (1965), págs. 349, 350:

"Bajo cualquier teoría, la justificación para la responsabilidad absoluta se ha dicho que es que el vendedor, por el hecho de poner en el mercado su producto para el uso y consumo, se ha comprometido y ha asumido una responsabilidad especial en relación a cualquier miembro del público consumidor que pueda resultar damnificado por éste; en el caso de productos necesarios y para los cuales tiene que forzosamente descansar en el vendedor, el público tiene derecho a esperar y así lo hace, que los vendedores de buena reputación se mantendrán detrás de sus bienes; que la política

anotamos la definición de defecto sugerida por el Juez Presidente Traynor en su artículo *The Ways and Meanings of Defective Products and Strict Liability*, 32 Tenn. L. Rev. 363, 367 (1965) y que lee así: "... un producto defectuoso puede ser definido como aquel que falla en igualar la calidad promedio de productos similares y el manufacturero es entonces responsable por los daños resultantes de las desviaciones de la norma". La Corte Suprema de California en *Cronin* v. *J.B.E. Olson Corporation*, 501 P.2d 1153 (1972), ratificado en *Barker* v. *Lull Engineering Co., Inc.*, 573 P.2d 443 (Cal. 1978), rechazó el concepto de la "condición irrazonablemente peligrosa al consumidor" consignada en el *Restatement* y resolvió que para aplicar la doctrina de responsabilidad absoluta basta ajustarse a lo expuesto en el caso de *Greenman* antes transcrito ya que provee "una prueba clara y sencilla para determinar si el demandante lesionado tiene derecho a un resarcimiento." *Cronin* a la pág. 1162. Ver además *Berkebile* v. *Brantly Helicopter Corp.*, 337 A.2d 893, 897 (Penn. 1975); Nota, *Products Liability—Restatement (Second) of Torts—Section 402A—Under Pennsylvania Law Must a Defective Product Be "Unreasonably Dangerous"?*, 21 Vill. L. Rev. 794 (1976).

▰▰▰ Es pertinente aclarar que el defecto que da margen a la aplicación de la doctrina de responsabilidad absoluta incluye tanto el defecto en la fabricación como en el diseño. "Un defecto puede surgir tanto de la mente del diseñador como de la mano del operario." *Cronin* a la pág. 1162. Y que como apuntamos en *Mendoza* a la pág. 512: "el fabricante no es asegurador de todos los daños que puedan ocasionar sus productos."

---

pública exige que el peso de los daños accidentales causados por productos hechos para el consumo recaiga en aquellos que los lanzaron al mercado, y que se le trate como un costo de producción contra el cual se puede obtener una póliza de seguro; y que el consumidor de tales productos tiene derecho a la protección máxima en manos de alguien, y las personas apropiadas a afrontar esto son aquellas que lanzaron los productos al mercado."

Como antes expresamos, el demandante tenía conocimiento del defecto del vehículo. ¿Le impide esta circunstancia recobrar bajo la doctrina de responsabilidad absoluta? En las jurisdicciones estatales impera la tesis de que la negligencia contributoria del demandante en esta clase de acciones no le impide resarcirse. Sin embargo, sostienen que la asunción de riesgo es una defensa que pueden levantar los demandados, *Luque* v. *McLean*, 501 P.2d 1163 (Cal. 1972); *Barth* v. *B. F. Goodrich Tire Co.*, 71 Cal. Rptr. 306, 314 (1968); *Vierra* v. *Fifth Avenue Rental Service*, 383 P.2d 777 (Cal. 1963).

■■■ Pero en Puerto Rico donde "[l]a imprudencia concurrente del perjudicado no exime de responsabilidad pero conlleva la reducción de la indemnización", Código Civil Art. 1802, ¿procede graduar la culpa en los casos donde se aplica la responsabilidad absoluta? Entendemos que sí. Es aceptado que la graduación de culpa en casos de negligencia es la forma más justa y razonable de imponer responsabilidad. Si es así en casos de negligencia ¿qué razón hay, que no sea de estricto tecnicismo para no aplicarla en casos de responsabilidad absoluta por defectos en los productos? En los Estados Unidos, donde ha habido una fuerte corriente hacia la adopción de la negligencia comparada,(³) bien por legislación o jurisprudencialmente, la mayoría de las autoridades sostienen que debe aplicarse la graduación de culpa en los casos de responsabilidad del manufacturero. No aplicar la graduación de culpa en los casos en que se impone responsabilidad al fabricante, porque su responsabilidad no está predicada en una actuación negligente, es un ejercicio en futilidad. Lo más justo es que la responsabilidad corra pareja con el grado de la falta, no importa el concepto por el que se imponga. Tan injusto resulta negarle compensación a un demandante porque en alguna medida contribuyó a la ocurrencia del acci-

---

(³) Treinta y un estados han adoptado la doctrina de la negligencia comparada, veintiocho por legislación y tres jurisprudencialmente según se relata en Brewster, *Comparative Negligence in Strict Liability Cases*, 42 J. Air L. Com. 107 (1976).

dente como imponerle toda la responsabilidad al fabricante de un artículo defectuoso no obstante haber sido imprudente el demandante al utilizarlo. Para hacer justicia debemos liberarnos de la esclavitud de los términos doctrinarios. *Cf.* Maleson, *Products Liability Actions*, 51 Temp. L.Q. 1 (1978); *Daly* v. *General Motors Corp.*, 144 Cal. Rptr. 380 (1978). Como se expresó en el artículo Brewster, *Comparative Negligence in Strict Liability Cases*, 42 J. Air L. Com. 107, 117 (1976):

"La preocupación expresada en algunas jurisdicciones de que la aplicación de la negligencia comparada a acciones por responsabilidad absoluta equivaldría a comparar 'manzanas con naranjas' no parece pasar un cuidadoso examen de lo que un tribunal tiene que hacer al impartir justicia en un sistema basado en culpa. El argumento parece igualar la responsabilidad absoluta con la teoría de responsabilidad sin culpa, cuando por el contrario el concepto de responsabilidad absoluta requiere prueba de una forma de conducta culposa—la producción de un diseño o producto defectuoso. Cuando se reconoce esta falacia en el razonamiento, la comparación entre una conducta negligente y una conducta que crea un producto defectuoso no es más forzada que comparar diferentes tipos de conducta negligente, como el manejar a exceso de velocidad con la falta de no detener un vehículo ante una señal de pare."

Es por eso que el Profesor Schwartz sugiere que "La negligencia comparada acrecentará y facilitará el desarrollo de la teoría de responsabilidad absoluta, en vez de causar problemas adicionales." Schwartz, *Strict Liability and Comparative Negligence*, 42 Tenn. L. Rev. 171, 181 (1974); Twerski, *Rethinking Products Liability*, 60 Marq. L. Rev. 297, 330 (1977). La Corte Suprema de California en reciente dictamen discute extensamente la aplicabilidad de la graduación de falta en los casos de responsabilidad absoluta y concluye que procede su aplicación. *Daly* v. *General Motors Corp.*, supra. Y en agosto de 1977, la National Conference of Commissioners on Uniform State Laws—por votación de 40 Estados a favor y 8 en contra—aprobó un Anteproyecto de

Ley Uniforme de Negligencia Comparada, que hace dicha norma aplicable a los casos de responsabilidad absoluta. Wade, *Strict Tort Liability for Products*, 44 Miss. L.J. 825, 850–851 (1973); Feinberg, *The Applicability of a Comparative Negligence Defense in a Strict Product Liability Suit (Can Oil & Water Mix)*, 42 Ins. Counsel J. 39 (1975); Vance, *The Automobile Manufacturer as Guarantor of His Product*, 11 Gonz. L. Rev. 221–233 (1975); *Powers* v. *Hunt-Wesson Foods Inc.*, 219 N.W.2d 393 (Wis. 1974); *Dippel* v. *Sciano*, 155 N.W.2d 55 (Wis. 1967); *Hagenbuch* v. *Snap-on Tools Corp.*, 339 F.Supp. 676 (D.C.N.H. 1972); *Butaud* v. *Suburban Marine & Sporting Goods, Inc.*, 555 P.2d 42 (Alaska 1972); *Teagle* v. *Fischer & Porter Co.*, 570 P.2d 438 (Wash. 1977). Pero véase: Levine, *Strict Product Liability and Comparative Negligence: The Collision of Fault and No-Fault*, 14 San Diego L. Rev. 337 (1977); Nota: *Products Liability, Comparative Negligence*, 50 So. Cal. L. Rev. 73 (1976) y opinión disidente del Juez Mosk en *Daly* v. *General Motors Corp.*, supra.

Teniendo el demandante conocimiento del defecto que tenía el vehículo, ciertamente actuó imprudentemente al tratar de utilizarlo para transportar el café. Estimamos que su falta contribuyó al accidente en un 40%.

Consideraremos ahora los errores relacionados con la cuantía de la indemnización concedida. Entiende la demandada que la suma de $52,000 concedida por la incapacidad y los sufrimientos y angustias mentales del demandante es excesiva. Un examen de las determinaciones de hecho sobre esta cuestión demuestra que no le asiste la razón.

Se concedieron al demandante $28,000 por pérdida de ingresos. La evidencia para sostener esta partida no justifica su concesión. La declaración de la persona que alega compraba lo cosechado en la finca, sin más, no es suficiente para sostener esta partida, especialmente cuando su declaración de ingresos al Departamento de Hacienda demuestra que no

hubo ganancias. Es interesante señalar lo que en su alegato afirma el demandante recurrido al discutir esta cuestión. "Tampoco hubo pruebas algunas de costos y gastos para producir las cosechas de café y frutos menores para deducirse del producto de las ventas de las mismas. El peso de la prueba sobre ese extremo recae sobre la recurrente y se cruzó de brazos negándole al Tribunal a quo la oportunidad de poder hacer las deducciones correspondientes por costos y gastos. No se puede quejar ahora en revisión de su propia conducta." Ciertamente era el demandante el que tenía que aportar esta prueba.

■ Tiene razón la recurrente en cuanto a que procedía hacer las deducciones que establece la Ley de Protección Social por Accidentes de Automóviles (9 L.P.R.A. secs. 2051–2055). La posición del recurrido es muy acomodaticia. Recibió los beneficios que da la ley y pretende que no se le hagan las deducciones por haber manifestado que está dispuesto a devolver lo que la A.C.C.A. le pagó. El vehículo accidentado estaba inscrito en el Departamento de Obras Públicas y el propio demandante declaró que lo usó para trasladarse a San Sebastián.

La impugnación a los honorarios del perito Sr. Reboreda carece de mérito.

■ No creemos que la recurrente fuera temeraria al defenderse en el presente pleito, por lo que no procedía imponerle el pago de intereses desde la radicación de la demanda, ni condenarle a pagar honorarios de abogado.

*El tribunal de instancia procederá a modificar la sentencia de acuerdo con los términos enunciados en esta opinión.*

Los Jueces Asociados Señores Torres Rigual e Irizarry Yunqué no intervinieron.