USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2305 WILLIAM CAMERON, ET AL., Plaintiffs, Appellants, v. OTTO BOCK ORTHOPEDIC INDUSTRY, INC., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin and Stahl, Circuit Judges. ______________ ____________________ Albert E. Grady with whom Office of Albert E. Grady was on brief _______________ _________________________ for appellants. Ronald M. Davids with whom Michelle I. Schaffer and Campbell & _________________ _____________________ __________ Associates, P.C. were on brief for appellee. ________________ ____________________ December 30, 1994 ____________________ BOUDIN, Circuit Judge. In March of 1990, William ______________ Cameron, whose left leg had been amputated below the knee in 1965, was fitted with a prosthetic leg. The prosthesis was assembled by Mr. Cameron's prosthetist from components originally sold by various suppliers, including Otto Bock Orthopedic Industry, Inc. ("Otto Bock"). Specifically, the artificial limb featured an Otto Bock pylon, which is an aluminum tube that substitutes for the missing portion of the leg, and an Otto Bock clamp, which attaches the pylon to an artificial foot manufactured and sold by another company. On May 28, 1991, Mr. Cameron fell when the Otto Bock pylon in his artificial leg broke into two pieces. Cameron alleged that he suffered a fractured pelvis and emotional damage as a result of the fall. Based on diversity jurisdiction, Mr. Cameron sued Otto Bock in federal court, charging negligence and breach of warranty. His wife, Kay Cameron, claimed loss of consortium. The case was tried by a jury in 1993. Each side attributed the failure of the leg to a different cause. The Camerons claimed that the pylon and clamp had been negligently and defectively designed. Otto Bock's expert testified that the prosthesis broke because the screw that fastened the pylon to the clamp had been "overtorqued," or screwed too tightly, by the prosthetist, despite a warning against overtightening by Otto Bock. The Camerons said that -2- -2- the instructions should have been more detailed. The jury found in favor of Otto Bock and the Camerons appeal. In this court, the Camerons' claims of error concern two rulings by the district court excluding evidence offered by them. The first ruling excluded several so-called "product failure reports" sent from prosthetists to Otto Bock. These excluded reports, all dated after Mr. Cameron's accident, detail the alleged failures of other prosthetic legs. The second group of excluded documents consisted of "Dear Customer" letters, sent by Otto Bock to prosthetists after the Cameron accident, that provided specific torque measurements to be used when screwing the pylon to the clamp. 1. The product failure reports in question are one- page standardized forms that a prosthetist must fill out in order to obtain a refund or credit for an Otto Bock product. The forms were designed by Otto Bock, but were completed by prosthetists who, in turn, typically obtained their information from conversations with their patients. The form required information about the nature of the problem, the age of the prosthesis, the demands placed on the prosthesis, and the patient's activity when the accident occurred; the form did not inquire directly about the cause of the problem. The trial judge allowed the Camerons to introduce product failure reports that were dated before Mr. Cameron's ______ -3- -3- accident, solely to show notice on the part of Otto Bock. The trial judge excluded several reports that were created after Mr. Cameron's accident and it is this exclusion that the Camerons claim to be error. There is some doubt whether the Camerons adequately raised and preserved this claim--Otto Bock says they did not. However, the district court did not rest its exclusion on this ground and, as we uphold the exclusion on the merits, we need not decide whether the Camerons waived the issue. The district court held that the exclusion of the reports was proper because they were irrelevant, because they did not fall within any exception to the hearsay rule, and because they were more prejudicial than probative. We commonly say that we review all three determinations solely for an abuse of discretion.1 This may be a mild overstatement since evidentiary rulings can sometimes contain buried rulings of law reviewable de novo, or basic findings _______ of fact subject to clear error review. In this case, fine distinctions about the standard of review would not affect the outcome. Unlike the pre-accident reports, which were admitted to show notice on the part of Otto Bock, the post-accident  ____________________ 1United States v. Brandon, 17 F.3d 409, 444 (1st Cir. _____________ _______ 1994) (relevancy determinations); Elgabri v. Lekas, 964 F.2d _______ _____ 1255, 1261 (1st Cir. 1992) (hearsay and business records exception); Raymond v. Raymond Corp., 938 F.2d 1518, 1523 _______ _____________ (1st Cir. 1991) (more prejudicial than probative). -4- -4- reports describe incidents that took place after Mr. Cameron's accident, and thus have no bearing on notice. Neither are they relevant as evidence of a design defect. The reports of other incidents would be probative evidence of the existence of a design defect only if the incidents occurred under circumstances substantially similar to those surrounding Mr. Cameron's accident. Vincent v. Louis Marx & _______ ____________ Co., Inc., 874 F.2d 36, 43 (1st Cir. 1989); McKinnon v. Skil _________ ________ ____ Corp., 638 F.2d 270, 277 (1st Cir. 1981). The circumstances _____ of the post-accident incidents are entirely unknown. We also think that there is an adequate basis for the district court's alternative conclusion that the reports contained inadmissible hearsay. This did not matter as to pre-accident reports offered solely to show notice; but in order to show defect, the truth of the reports is critical. Yet it appears that the information contained in the reports was provided to Otto Bock from independent prosthetists who themselves derived some or all of the information from their own patients. While the reports may be part of the business records of Otto Bock in a colloquial sense, that does not render admissible information contained in the records whose source is a non-party to the business. Under Fed. R. Evid. 803(6), the report must be made by a person acting "in the course of a regularly conducted business activity." It is quite clear -5- -5- that the prosthetists' patients are not part of Otto Bock's business. The case is akin to Petrocelli v. Gallison, 679 __________ ________ F.2d 286, 290 (1st Cir. 1982), where we held that a hospital patient who related his medical history "is not part of a `business' routine in which he is individually a regular participant." We thus have no reason to consider whether the business records exception might apply if the information were generated solely by the prosthetists in the course of their own businesses. See Fed. R. Evid. 805 (hearsay exceptions ___ can be layered). Conversely, we need not pass on the suggestion that the adverse interests of the prosthetists--in obtaining refunds and warding off lawsuits against them-- might permit exclusion of any business records they themselves generated as to the cause of a failure under the exclusion for business records whose source "indicate[s] lack of trustworthiness." Fed. R. Evid. 803(6). See Palmer v. ___ ______ Hoffman, 318 U.S. 109 (1943). _______ Since both the relevance and hearsay objections are well founded, we need not consider in detail the district court's further ruling that prejudice would substantially outweigh relevance. Fed. R. Evid. 403. We do note that the lack of proof of similarity of circumstances reinforces any decision to exclude under Rule 403. Additionally, in this kind of balancing of prejudice and relevance, abuse of discretion is -6- -6- undoubtedly the test on review, and Rule 403 judgments, calling on the district court's "feel" for the situation, are quite unlikely to be disturbed. 2. The Camerons' other challenge is to the trial judge's exclusion of letters sent by Otto Bock to its prosthetist customers after Mr. Cameron's fall. These "Dear Customer" letters specified, inter alia, the specific torque ___________ levels that should be observed in screwing the pylon to the clamp in prosthetic limbs like Mr. Cameron's. Arguably these letters, if sent earlier, would have prevented Mr. Cameron's accident. The Camerons contend that such letters are evidence that Otto Bock breached its warranties of merchantability and fitness for a particular purpose. The trial judge excluded the letters on the ground that the furnishing of precise torque measurements was a safety measure undertaken after the accident, and thus inadmissible under Federal Rule of Evidence 407, which provides: When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment. The Camerons argue first that the Dear Customer letters -7- -7- should have been admitted to show the feasibility of ___________ providing the torque measurements earlier and to show the control Otto Bock exerted over its prosthetist customers. _______ These exceptions apply, however, only "if" feasibility or control are "controverted." The feasibility of giving the torque measurements was certainly not controverted. The defense offered to stipulate to feasibility, cf. Raymond v. ___ _______ Raymond Corp., 938 F.2d 1518 (1st Cir. 1991); and when the _____________ Camerons rejected the offer, apparently for tactical reasons, the district court instructed the jury that the further information could feasibly have been distributed. "Control" is also a non-issue. Otto Bock never disputed that it provided advice to the prosthetists who assembled its products. Nor did it deny that providing more detailed measurements might have avoided the accident; indeed, its position was that the screw was overtightened and it had never provided specific numbers prior to the accident. If the Camerons justify the introduction of the letters in order to show causation, as their brief implies, then we think that the "if controverted" condition is not satisfied. The Camerons do not appear to be claiming that the prosthetists were effectively employees of Otto Bock so that it might be vicariously liable for the negligence of Cameron's own prosthetist on a master-servant theory. Even if the Camerons had advanced such a claim, the raw fact that -8- -8- Otto Bock provided directions for the use of its product was undisputed and that is the most that the Camerons would be entitled to derive from the letters. There may also be some doubt whether "control" in the master-servant sense is what the drafters of Rule 407 had in mind, but we need not explore this interesting issue. The Camerons also argue that the Dear Customer letters should have been admitted as direct evidence of breach of warranty--i.e., as evidence that the Otto Bock components ____ were defective--because, under Massachusetts law, such evidence might be admissible in a state trial. This circuit, however, has long held that the Federal Rules of Evidence, and specifically Rule 407, apply in diversity proceedings, because they "address procedural matters, [were] duly passed by Congress, [and] shall be presumed constitutionally valid unless they cannot rationally be characterized as rules of procedure." McInnis v. A.M.F., Inc., 765 F.2d 240, 244 (1st _______ ____________ Cir. 1985). Compare Fed. R. Evid. 501 (providing that state ________ privilege law governs in diversity cases). Finally, the Camerons argue that, even if Rule 407 applies, by its terms it prohibits evidence of subsequent remedial measures only "to prove negligence or culpable conduct in connection with the event." The Camerons argue that breach of warranty, according to Massachusetts law, does not constitute "negligence or culpable conduct." We recently -9- -9- rejected this very argument in Raymond v. Raymond Corp., 938 _______ _____________ F.2d 1518, 1522 (1st Cir. 1991). The Camerons urge us to reconsider Raymond, but they offer us no grounds for doing so _______ that were not before this court in that case. Affirmed. _________ -10- -10-