**Jose Miguel CARBALLO RODRIGUEZ, et al.,**
Plaintiffs

v.

**CLARK EQUIPMENT COMPANY, INC., et al., Defendants**

**Civil No. 99–1446 (JP).**

United States District Court, D. Puerto Rico.

June 6, 2001.

Vicente Santori–Coll, Jorge M. Torres–Gómez, Hato Rey, PR, for Plaintiff.

Ramón L. Viñas–Bueso, Rivera Tulla & Ferrer, Hato Rey, PR, for Defendants.

## ORDER

PIERAS, Senior District Judge.

### I. INTRODUCTION

Before the Court is Plaintiffs' Motion in Limine Requesting Ruling as to the Admissibility of Documentary Evidence (docket No. 120), Defendants' Opposition to Plaintiffs' Motion in Limine and Cross–Motion to Preclude (docket No. 137); and Plaintiffs' Reply (docket No. 158). Plain-

tiffs bring this action against Defendants Clark Equipment Company, Inc. ("Clark"), Ingersoll–Rand Company, Dial Corporation, and Volvo Construction Equipment North America, Inc. for damages arising from an accident on a construction site whereby a four-ton load dropped from a Lima Model 700–TC crane (serial No. 3689–5) ("the Crane") onto Co-plaintiffs José Miguel Carballo–Rodríguez and Héctor López–Irizarry, causing extensive injuries. Plaintiffs allege that the hoist brake latch mechanism on the crane was defective, and plead theories of strict liability and negligence due to a manufacturing defect, design defect, and/or a failure to warn.

## II. DISCUSSION

### A. Substantive Legal Standards

The Court finds it helpful *ab initio* to briefly state the applicable legal standards governing Plaintiffs' substantive causes of action before addressing the evidentiary issues.

### 1. Strict Liability

■■■ The Puerto Rico Supreme Court has adopted the following formulation of the California Supreme Court concerning strict products liability: " 'A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.' " *Rivera Santana v. Superior Packaging Inc.,* 132 D.P.R. 115, 125–26 (P.R.1992) (quoting *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 900 (1962)); *Montero Saldaña v. American Motors Corp.,* 107 D.P.R. 452 (P.R.1978). To establish strict liability under Puerto Rico law, a plaintiff must prove that (1) the product had a defect that made the product unsafe, and (2) the defect proximately caused the plaintiff's injury. *See Rivera*

*Santana,* 132 D.P.R. at 126. This test essentially follows that of the Restatement (Second) of Torts § 402A, except that it requires "unsafeness" rather than a showing that the defective product was "unreasonably dangerous." *See Pérez–Trujillo,* 137 F.3d at 53 n. 5; *Montero Saldaña,* 107 D.P.R. at 461.

■■■ In the context of a manufacturing defect, a defective product is one that "differs from the manufacturer's intended result or from other ostensibly identical units of the same product line. For example, when a product comes off the assembly line in a substandard condition it has incurred a manufacturing defect." *See Rivera Santana,* 132 D.P.R. at 128–29 n. 7 (quoting *Barker v. Lull Engineering Co.,* 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443, 454 (1978)). The manufacturer is then responsible for the damages resulting from any deviations from the norm. *See Montero Saldaña,* 107 D.P.R. at 462. The manufacturer, however, is not an absolute insurer of the product's safety; thus, it will respond in strict liability only where the usage to which the product was put by the plaintiff was reasonably foreseeable by the manufacturer. *See Rivera Santana,* 132 D.P.R. at 127; *Pérez–Trujillo v. Volvo Car Corp.,* 137 F.3d 50, 53 (1st Cir.1998).

■■■ To prove a design defect, on the other hand, one of two tests will govern, depending on the nature of the product. Under the first test, known as the consumer expectations test, a product may be found defective in design if the plaintiff demonstrates "that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Barker v. Lull Engineering Co.,* 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443, 454 (1978); *Rivera Santana,* 132 D.P.R. at 129. In *Barker,* the California Supreme Court not-

ed that an injured plaintiff will frequently be able to demonstrate the defectiveness of a product based on this standard by resort to circumstantial evidence, "even when the accident itself precludes identification of the specific defect at fault." *Barker*, 143 Cal.Rptr. 225, 573 P.2d at 454. In those situations where the nature of the product places it outside the realm of an ordinary consumer's experiences, the applicable standard is a cost-benefit analysis. Thus, a product may be found defective in design "if through hindsight the jury determines that the product's design embodies 'excessive preventable danger,' or, in other words, if the jury finds that the risk of danger inherent in the challenged design outweighs the benefits of such design." *Id.; see also Rivera Santana*, 132 D.P.R. at 129. "With respect to the second test, the following factors are considered: the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanism feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." *Rivera Santana*, 132 D.P.R. at 129 n. 9 (quoting *Barker*, 143 Cal.Rptr. 225, 573 P.2d at 455).

In addition, a product may be considered defective if the manufacturer or seller fails to provide the consumer adequate warnings or instructions concerning the dangers or risks inherent in the use of the product. *See id.* at 129–30, 143 Cal. Rptr. 225, 573 P.2d 443. The duty to warn extends to all reasonably foreseeable uses of the product, and the manufacturer or seller incurs in liability if it knew or should have known of the danger or risk involved, and the necessity to provide a warning to guarantee the safe use of the product. *See id.* at 130, 143 Cal.Rptr. 225, 573 P.2d 443. "A strict liability claim under any of these theories centers on the condition of the product 'at the time it leaves the seller's hands.'" *Bogosian v. Mercedes–Benz of North Am., Inc.*, 104 F.3d 472, 481 (1st Cir.1997) (quoting Restatement (Second) of Torts § 402A cmt. g); *see also Raymond v. Raymond Corp.*, 938 F.2d 1518, 1524 (1st Cir.1991).

## 2. Negligence

Plaintiffs also articulate a negligence claim, asserting that Defendants negligently designed and manufactured the product, and failed to adequately warn those persons within the range of the potential danger. In Puerto Rico, negligence is "the failure to exercise due diligence to avoid foreseeable risks." *Malavé–Félix v. Volvo Car Corp.*, 946 F.2d 967, 971 (1st Cir.1991) (citing *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700 (P.R.1982)). To prevail, a plaintiff must prove that (1) defendant owed a duty to prevent the harm by conforming to a reasonable standard of conduct, (2) defendant breached that duty through a negligent act or omission, and (3) the negligent act or omission caused the plaintiff's harm. *See Tokio Marine & Fire Ins. Co., Ltd. v. Grove Manuf. Co.*, 958 F.2d 1169, 1171 (1st Cir.1992). Plaintiffs bear the burden of establishing the applicable standard of care, and proving that Defendants acted below that minimum standard, and that Defendants' negligence was the proximate cause of Plaintiffs' damages. *See id.* at 1171, 1172.

## B. The Evidence

### 1. Ghrist Sworn Statement

The first item is the April 6, 2000 sworn statement of Roy Ghrist, Director of Product Integrity at Volvo Construction Equipment North America, Inc. ("Volvo"). Plaintiffs proffer this statement to show how the hoist brake latch mechanism on the Lima Model 700–TC Crane works.

Defendants object to the admissibility of the statement, alleging that it constitutes hearsay under Fed.R.Evid. 802. Volvo, however, is a Co-defendant in this matter. Plaintiffs seek to offer the statement against Defendants in conjunction with the testimony of Defendants' own expert witness, Gerald Whitehouse, that he agreed with Ghrist's statement of how the hoist brake latch mechanism worked in the Lima Model 700–TC crane, and that Ghrist's explanation applied equally to the hoist brake latch mechanisms of the Lima Model 700–T and 700–HC cranes. Thus, Ghrist's statement does not come within the definition of hearsay, because it constitutes an admission of a party opponent. *See* Fed.R.Evid. 802(d)(2).

## 2. Service Reports and Telephone Logs

■ Second, Plaintiffs seek an evidentiary ruling concerning (1) service reports dated September 13, 1973; August 7–8, 1974; and August 21, 1974; and (2) telephone records dated September 12, 1973 and January 14, 1974. The September 13, 1973 service report details a complaint concerning the failure of the hoist brake latch mechanism to fully latch, resulting in the dropping of the hammer on a Lima 700 HC pile driver, and a modification made to the brake latch mechanism by the serviceman to correct the problem. The August 7–8, 1974 report describes a complaint, also involving the Lima 700 HC pile driver, whereby the latch on the brake pedal vibrated off, and further explains how the serviceman modified the brake pedal latch to address the problem. The August 20, 1974 service report details modifications made to the brake latch mechanism in a model 700–HC crane in order to keep slack out of the main hoist line. Turning to the telephone logs, the September 12, 1973 telephone log details the complaint that is the subject of the

September 13, 1973 service call and report. The January 14, 1974 telephone log describes a complaint that the brake pedal in the model 700 TC did not latch in properly.

Plaintiffs proffer these documents to establish that since 1973, Co-defendant Clark Equipment Company ("Clark") had notice of the incomplete or false latching defect in the 700 series Lima cranes. Defendants object to their admissibility on the grounds of relevancy, pointing out that the Crane left Clark's possession on June 22, 1974, prior to the date of many of these reports, and the key inquiry in a manufacturing defect claim is the condition of the product at the time it leaves the seller's hands. *See Bogosian*, 104 F.3d at 481. The holding in *Bogosian* addressed the potential prejudice of admitting post-manufacture, pre-accident design modifications, and found not that they were irrelevant, but that they would unduly prejudice the defendants. *See id.*

 Other incidents of product failure are "probative of the existence of a design defect [ ] if the incidents occurred under circumstances substantially similar" to Plaintiffs' accident. *See Cameron v. Otto Bock Orthopedic Industry, Inc.*, 43 F.3d 14, 16 (1st Cir.1994). In addition, on the issue of negligence, the Court may admit evidence of post-sale product failures to show notice and negligent design, although again Plaintiffs must demonstrate substantial similarity in circumstances. *See Vincent v. Louis Marx & Co. Inc.*, 874 F.2d 36, 43 (1st Cir.1989); *McKinnon v. Skil Corp.*, 638 F.2d 270, 277 (1st Cir. 1981). The First Circuit has noted, however, that "[e]ven when substantial identity of the circumstances is proven, the admissibility of such evidence lies within the discretion of the trial judge who must weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial

of collateral issues against the factors favoring admissibility." *McKinnon*, 638 F.2d at 277.

The Court finds that the service reports dated September 14, 1973 and August 7–8, 1974 report are relevant to Plaintiffs' strict liability and negligence theories, and are admitted to show design defect, notice of product failures, and failure to warn. Substantial similarity in circumstances is evident from the text of those reports, including the description of the modification performed by the Clark serviceman, and from Plaintiffs' evidence tending to show that the hoist brake latch mechanism on the Lima model 700HC works in a similar or identical fashion as on the model 700TC crane. The reports are not hearsay because they were drafted by agents of Clark and are based on those agents' personal knowledge, and therefore constitute admissions of a party opponent. *See* Fed. R.Evid. 801(d)(2)(D). Finally, the Court finds that their probative value is outweighed by the risk of prejudice to Defendants.

■ The service report dated August 20, 1974 report, which deals with slack in the main hoist line and not the problem of improper latching in the hoist brake mechanism, is irrelevant and therefore excluded. The Court also excludes the telephone logs because there is insufficient evidence to establish substantial similarity of circumstances, and they constitute hearsay. *See Cameron*, 43 F.3d at 16.

### 3. Prior Complaints in the *Lindley* and *Morrie* Cases

■ Plaintiffs proffer an amended complaint filed on January 30, 1985 with the United States District Court for the Eastern District of Oklahoma, in the case of *Lindley v. Clark*, Civ. No. C–84–581–C. In that case, the amended complaint alleged that by reason of its defective design, manufacture, and construction the hoist brake pedal mechanism of a 700–TC Lima crane failed when the hook latch on the hoist brake latch mechanism slipped, causing the load to drop upon Horace Lindley. Defendants object, contending that the allegations in the *Lindley* complaint do not lend support to Plaintiffs' theory of design defect, and they are overly prejudicial. Based on the text of the amended complaint, the Court finds that it deals with a product failure occurring under substantially similar circumstances, and therefore admits the amended complaint. It further finds that its probative value outweighs the risk of prejudice to Defendants.

■ The Court comes to a different conclusion concerning the complaint alleged to have been filed in the case of *Morrie v. Clark*, Civ. No. C–86–434–L, in the U.S. District Court for the District of New Hampshire, also involving the claimed failure of the hoist brake latch mechanism in the Lima model 700–TC crane. The document offered by Plaintiffs is neither signed by Morrie's counsel, nor date-stamped as having been received in that court. Because the *Morrie* complaint has not been properly authenticated, the Court hereby excludes it. *See* Fed.R.Evid. 901, 902.

### 4. Answers to Interrogatories from Prior Litigation

The next piece of evidence for which Plaintiffs seek an evidentiary ruling are items 38 and 39 of Clark's answers to interrogatories, from the *Morrie* litigation. In the answers to the interrogatories, dated March 25, 1987, Clark affirms that it had notice of the alleged defect in the hoist brake mechanism in the model 700–TC crane prior to the alleged malfunction in that case, and attached to its answer the service reports and telephone logs dis-

cussed above. Defendants challenge their admissibility on the grounds of relevancy and hearsay.

The Court previously entertained Defendants' objection to the admissibility of these documents in ruling upon Defendants' motion to strike documents appended to Plaintiffs' opposition to a motion for summary judgment. The Court ruled that the answers were admissible as an evidentiary admission, but not as a conclusively binding admission. The Court wishes to clarify, however, that it erroneously referred to the answers to interrogatories as answers to a request for admissions under Federal Rule of Civil Procedure 36(b). Rule 36(b) provides that any party may serve upon an opposing party a request for admissions as to certain matters, for purposes of the pending action only. Here, however, the Court has before it not admissions under Rule 36(b), but answers to interrogatories under Rule 33. Having clarified the issue, the Court now moves on to Defendants' relevancy-based objection.

■ Defendants' objection on the grounds of relevancy, based again on its overly-broad reading of *Bogosian,* is without merit. Further, the answers do not constitute hearsay, because they are the admissions of a party opponent and are contradictory to the factual position taken by Clark in the instant litigation. *See Trull v. Volkswagen of America,* 187 F.3d 88, 99 (1st Cir.1999) (affirming the district court's admission of evidence propounded by a party in prior litigation that was contradictory to a factual position taken in subsequent case by the same party). And as the Court held previously, the statements contained in these documents are admissible not as conclusive judicial admissions, but merely as evidentiary admissions. *See Thyssen Elevator Co. v. Drayton–Bryan Co.,* 106 F.Supp.2d 1355, 1361 (S.D.Ga.2000).

### 5. December 16, 1985 Letter from Wayne E. Shaw to John C. Cary

■ The fifth item proffered by Plaintiffs is a letter dated December 16, 1985 on Clark letterhead from Wayne E. Shaw, Chief Engineer, to John C. Cary. In the letter, Shaw describes the functioning of the brake mechanism in the context of the *Lindley* case, and makes reference to a proposed warning decal that he enclosed with the letter. Plaintiffs submit the letter as further evidence that Clark had notice of the alleged defect in the hoist brake latch mechanism. The letter, however, is written in thick technical jargon, thereby opaquing its potential relevancy to the instant case. From the text of the letter, the Court cannot determine what problem with the hoist brake mechanism Shaw is discussing, nor what the warning decal proposed. The Court therefore excludes this document. *See* Fed.R.Evid. 401. Alternatively, the evidence is needlessly cumulative in light of the numerous other documents proffered to show notice on behalf of Clark. *See* Fed.R.Evid. 403.

### 6. Prior Deposition Testimony of John C. Cary

■ Sixth, Plaintiffs request this Court's ruling on the admissibility of John C. Cary's December 9, 1992 deposition testimony. This testimony is classic hearsay. The Court has no basis for concluding that Cary made the statement as an agent, and thus cannot admit it under Fed.R.Evid. 801(d)(2)(C)-(D). The testimony could become admissible if inconsistent with Cary's testimony at trial, or if he is unavailable to testify. *See* Fed.R.Evid. 801(d)(1)(A), 804. Plaintiffs make no expression that either of these exceptions to the hearsay rule come into play here. As such, the Court hereby excludes the deposition testimony,

although with the caveat that contradictory testimony by Cary at trial, if he testifies, opens the door to Plaintiffs to again proffer the December 9, 1992 transcript.

### 7. September 6, 1989 Letter from E. Paul Kelly to John C. Cary

In this letter, Clark's attorney E. Paul Kelly discusses at length the risks of going to trial in the *Morrie* case, and seeks authorization to settle that case for $450,000.00. Defendants admit that they waived the attorney-client privilege by voluntarily disclosing this letter in separate litigation, but advocate for the exclusion of the letter under Rule 408 of the Federal Rules of Evidence. Rule 408 provides that evidence of conduct or statements made in the context of settlement negotiations are inadmissible to prove liability. Plaintiffs profess not to offer the letter to establish Clark's liability, but rather to prove certain facts related in the letter. For example, Kelly mentions that he was present when Wayne Shaw inspected the crane in the *Morrie* case, and that Shaw was able to reproduce the "false positive latching" the first time he engaged the hoist brake.

■ Plaintiffs assert that Kelly's factual statements in the letter are admissible, pursuant to Rules 801(d)(2)(C)-(D) of the Federal Rules of Evidence, as the admission of a party opponent. This Court disagrees. To begin, a letter written by an attorney for the purpose of seeking authorization to settle a case brings the letter within the ambit of Rule 408. *See U.S. ex rel. Mayman v. Martin Marietta Corp.,* 886 F.Supp. 1243, 1249 (D.Md.1995) ("[T]he Federal Rules of Evidence generally prevent a party from using at trial statements made during, or information specifically prepared for the purposes of, settlement discussions."). Further, Rule 408 would be rendered hollow were this Court to permit the redaction of the letter

in order to extract each factual statement contained therein. In light of the importance of the policies underlying Rule 408, and the context in which this letter was prepared, the Court hereby excludes the Kelly letter. *See Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 293 (2d Cir.1999) (observing that trial courts possess broad discretion when a party seeks to admit into evidence for purposes other than to establish liability materials ostensibly barred by Rule 408).

### 8. February 17, 1993 Affidavit of John C. Cary

■ The affidavit of John C. Cary, dated February 17, 1993, was prepared in the context of litigation between Clark and the *Dial Corporation* in an action for indemnity. Both Clark and Dial are Co-defendants in the instant action. Plaintiffs seeks a ruling on the admissibility of the affidavit, and in particular Cary's statement that the *Lindley* case "was a case which involved injuries caused by the same type of crane as the one in *Morrie* and with a hoist brake mechanism defect almost identical to that involved in *Morrie*," which Plaintiffs proffer as an admission on the issue of design defect. Although Cary had at certain times served as Clark's general counsel, and at other times as a consultant to Clark, it is unclear from the face of the affidavit in what capacity Cary made that declaration. As such, Plaintiffs find themselves under the shadow of the hearsay rule. Looking at the evidence before it, the Court has no basis for concluding whether Clark authorized Cary to make that statement, *see* Fed.R.Evid. 801(d)(2)(C), or whether Cary was Clark's agent or servant at the time and the statement was concerning a matter within the scope of Cary's agency or employment with Clark. *See* Fed.R.Evid. 801(d)(2)(D). Even if Plaintiffs had established that

Cary's statement fell within one of these subdivisions excepting it from the definition of hearsay, the Court would exclude the statement as misleading and prejudicial, since it was given in the context of an indemnity action. *See* Fed.R.Evid. 403.

### 9. 1990 and 1995 Service Bulletins and Warning Decals

 Plaintiffs proffer two service bulletins and warning decals issued by VME, dated February 21, 1990 and March 1995, respectively, as evidence of design defect and the need for a warning. The service bulletins warn operators of Lima cranes, including models 700TC and 700HC, that some operators are not fully engaging the foot pedal for the hoist brake. Enclosed with the bulletins is a warning decal to be placed inside the cab of the crane, instructing operators in the proper application of the brake pedal.

The Court finds that neither of the service bulletins and warning decals are admissible. The second Service Bulletin and Warning decal, issued more than four years after the December 8, 1990 crane accident involved in this case, and offered to prove design defect and the need for a warning, fall squarely within Rule 407, precluding evidence of subsequent remedial measures. *See* Fed.R.Evid. 407 ("When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. . . .").

 The first service bulletin and warning decal, on the other hand, were issued prior to the occurrence of the accident. As such, Rule 407 does not apply. *See Raymond,* 938 F.2d at 1523. Defen-

dants move the Court to exclude the document under Rule 403. As Defendants rightly point out, the First Circuit has held that admitting evidence of post-manufacture warning or design modification risks leading the jury to equate the warning with an admission of a prior defective design. *See Bogosian,* 104 F.3d at 481. Accordingly, the Court excludes the first service bulletin and warning decal under Rule 403.

### 10. Pleadings from Prior Litigation in *Clark v. Dial,* Civil No. 90–C–524, 1993 WL 278547 (July 20, 1993)

 Plaintiffs seek a ruling concerning various pleadings filed in an indemnity action brought by Clark against the Dial Corporation. Plaintiffs offer these pleadings as proof of the product's defective design. That dispute, however, centered on the interpretation of an indemnity agreement between the two parties, after Clark entered into a settlement in the *Morrie* case. Upon close examination of the pleadings and the context in which that dispute arose, the Court excludes the documents because their probative value on the issue of design defect is outweighed by the risk of prejudice to Defendants. *See* Fed.R.Evid. 403.

## III. CONCLUSION

For the reasons set forth herein, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion in Limine and Defendants' Cross–Motion to Preclude.

**IT IS SO ORDERED.**