En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Andrés Aponte Rivera, Etc.<br><br>     Demandante-Recurrido<br><br>  .V<br><br>Sears Roebuck de Puerto Rico, Inc.<br><br>     Demandada-Recurrente | Certiorari<br><br>TSPR-98-12 |

Número del Caso: RE-92-416 Cons. con CE-92-537

Abogados Parte Demandante: Lcdo. Luis Sánchez Betances
Lcda. Marta Elisa González
(Bufete Sánchez Betances & Sifre)

Abogados Parte Demandada: Lcdo. Rafael Emanuelli Jiménez
Lcdo. Rolando Emanuelli Sepúlveda
Lcdo. Rolando Emanuelli Jiménez
(Bufete Emanuelli)

Abogados Parte Interventora:

Tribunal de Instancia: Superior Sala de Ponce

Juez del Tribunal de Primera Instancia: Hon. Luis Muñiz
Arguelles

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 2/24/1998

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del
Tribunal Supremo que está sujeto a los cambios y
correciones del proceso de compilación y publicación
oficial de las decisiones del Tribunal. Su
distribución electrónica se hace como un servicio
público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Andrés Aponte Rivera, etc.


        Demandantes-recurridos

                                    RE-92-436
            v.                      CE-92-537


Sears Roebuck de P.R., Inc.


        Demandado-recurrente


Opinión emitida por la Juez Asociada señora NAVEIRA DE RODON exponiendo la Opinión del Tribunal en sus partes I, II y III[*]


                San Juan, Puerto Rico a 24 de febrero de 1998.

---

[*] El Juez Presidente señor Andréu García y el Juez Asociado señor Hernández Denton se unen a la totalidad de la Opinión. El Juez Asociado señor Fuster Berlingeri disintió en cuanto a la parte IV sobre honorarios. El Juez Asociado señor Negrón García emitió una Opinión Disidente, a la cual se unió el Juez Asociado señor Rebollo López. El Juez Asociado señor Corrada Del Río no intervino.

Como resultado del disenso parcial del Juez Asociado señor Fuster Berlingeri, los disensos totales de los Jueces Asociados señores Negrón García y Rebollo López y la no intervención del Juez Asociado señor Corrada Del Río, se confirma la concesión de honorarios, por estar igualmente dividido el Tribunal.

Hoy nuestra tarea consiste en revisar una sentencia parcial emitida por el Tribunal Superior, Sala de Ponce, que impone responsabilidad absoluta a Sears Roebuck de Puerto Rico, Inc. (Sears) por daños que causó la explosión de una batería de automóvil. Enmarcamos nuestra función revisora en las nociones de responsabilidad social que han motivado al legislador puertorriqueño a delinear una sólida política pública de protección al consumidor.[1]

I.  HECHOS

Allá para el 17 de agosto de 1985, el Sr. Andrés Aponte Rivera acudió a la tienda Sears localizada en la calle Ferrocarril de Ponce y allí adquirió una batería de automóvil marca Sears Die Hard, Modelo 4301. Los empleados del taller de mecánica de dicha tienda la instalaron en el automóvil, tras revisar el regulador de voltaje, el alternador, el arranque (<u>starter</u>), los cables de la batería y la polea del abanico del alternador. Estos sistemas de encendido y carga del vehículo estaban trabajando bien al momento de la instalación.

---

[1] En nuestra jurisdicción existen múltiples leyes y reglamentos dirigidos a enfrentar los problemas o peligros que acosan al consumidor. De hecho, los esfuerzos del legislador puertorriqueño por enfrentar de manera efectiva los problemas del consumidor llevaron inicialmente a la creación de la Administración de Servicios al Consumidor, mediante la Ley Núm. 148 de 27 de junio de 1968, según enmendada, 23 L.P.R.A. sec. 1001. Posteriormente, al crearse el Departamento de Asuntos al Consumidor, se le transfirieron a este nuevo organismo administrativo, entre otros, las funciones, poderes y deberes de la Administración de Servicios al Consumidor, 3 L.P.R.A. sec. 341d (A)(a).

El accidente ocurrió el 7 de julio de 1988. Ese día los demandantes viajaban en su automóvil y se detuvieron en una panadería. Cuando se proponían regresar a su casa, el vehículo no encendió. El señor Aponte Rivera se bajó del automóvil, abrió el bonete y movió con sus manos los conectores de los polos de la batería. No usó herramienta alguna, ni trató de cargar la batería. Estando frente al vehículo, pero habiéndose retirado, le indicó a su esposa que intentara encenderlo. Cuando ésta lo hizo, la batería explotó. En ausencia de pasión, prejuicio, parcialidad o error manifiesto, no intervendremos con esta apreciación de hechos. Orta v. Padilla, Op. de 8 de febrero de 1995, 137 D.P.R. ____ (1995), 95 J.T.S. 21, pág. 668; Rodríguez Oyola v. Machado Díaz, Op. de 3 de junio de 1994, 136 D.P.R. ____ (1994), 94 J.T.S. 82, pág. 12008; Coop. Seguros Múltiples de P.R. v. Lugo, Op. de 25 de mayo de 1994, 136 D.P.R. ____ (1994), 94 J.T.S. 77, pág. 11985; Levy v. Aut. Edif. Públicos, Op. de 15 de marzo de 1994, 135 D.P.R. ____ (1994), 94 J.T.S. 32, pág. 11632; Rodríguez Amadeo v. Santiago Torres, Op. de 29 de junio de 1993, 133 D.P.R. ____ (1993), 93 J.T.S. 106, pág. 10901, nota al calce 12; Gallardo v. Petiton y V.T.N., Inc., Op. de 30 de noviembre de 1992, 132 D.P.R. ____ (1992), 92 J.T.S. 158, pág. 10132; Benítez Guzmán v. García Merced, 126 D.P.R. 302, 308 (1990); Elba A.B.M. v. U.P.R., 125 D.P.R. 294, 319 (1990); A.E.E. v. Las Américas Trust Co., 123 D.P.R. 834, 845 (1989); Torres Ortiz v. Plá, 123 D.P.R. 637, 654 (1989); Riley v. Rodríguez

de Pacheco, 119 D.P.R. 762, 797 (1987); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984); La Costa Sampedro v. La Costa Bolívar, 112 D.P.R. 9, 19 (1982).

Así las cosas, el señor Aponte Rivera y su esposa, la Sra. Margarita Pérez Guadalupe, por sí y en representación de sus hijos menores de edad, Maribel, Mariel y Andrés José, instaron una demanda por daños y perjuicios contra Sears. Alegaron haber sufrido diversos daños como consecuencia de la explosión de la batería en cuestión.[2] Adujeron que los daños sufridos fueron producto de "la culpa y negligencia de la parte demandada al distribuir y poner en el mercado una batería defectuosa y en condiciones que la hicieron estallar en el momento del accidente sin que mediara ningún tipo de intervención negligente por parte del demandante." Con posterioridad enmendaron su demanda para alegar que la batería era un producto inherentemente peligroso; que Sears o el fabricante de la batería objeto del pleito conocían la peligrosidad de dicho producto y debieron prever los daños que podía causar; que la condición de peligrosidad no era aparente ni anticipable por los usuarios y consumidores de

---

[2] Según surge de las alegaciones de la demanda, el señor Aponte Rivera sufrió lesiones en la cara, laceración en la córnea del ojo izquierdo y se subluxó el lente, lo que provocó que desarrollara una catarata traumática en el ojo y pérdida de visión. También surgen de las referidas alegaciones los daños económicos y emocionales del demandante, así como los daños emocionales sufridos por su esposa e hijos.

productos de tal naturaleza; que los avisos de peligro e instrucciones que tenía la batería estaban escritos en inglés y, por lo tanto, eran inefectivos o inexistentes y constituían un defecto del producto. Sears se opuso a las enmiendas, pero el tribunal las permitió y extendió el período del descubrimiento de prueba limitándolo a lo añadido.[3]

Al contestar la demanda, Sears negó que el producto fuera defectuoso o que fuera la causa próxima de los daños que reclamaron los demandantes. Alegó que la batería objeto del pleito era, por lo menos, de igual calidad que el promedio de productos similares y que la causa eficiente de los daños reclamados fue la negligencia del demandante o que la negligencia de éste contribuyó en mayor grado a la causa del accidente que cualquier defecto o negligencia atribuible a ella. Además, insistió en que la naturaleza del producto y su uso, así como su mantenimiento y riesgo, eran de conocimiento del demandante; que la información colocada en la batería era suficiente y adecuada, a pesar de estar

---

[3] En su recurso de revisión, Sears protestó las enmiendas a la demanda alegando que las mismas fueron presentadas un año y tres meses después del accidente, además de sólo seis (6) días antes de que venciera el permiso para concluir el descubrimiento de prueba. El planteamiento es inmeritorio. El tribunal de instancia tiene amplia discreción para permitir enmiendas a la demanda aun en etapas avanzadas de los procedimientos. Reglas 13.1 y 13.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Ortiz Díaz v. R. & R. Motor Sales Corp., Op. de 26 de octubre de 1992, 131 D.P.R. ___(1992), 92 J.T.S. 140; Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721, 737 (1984); Clemente v. Depto. de la Vivienda, 114 D.P.R. 763, 771 (1983); Epifanio Vidal, Inc. v. Suro, 103 D.P.R. 793, 795 (1975); Srio. del Trabajo v. Vélez, 86 D.P.R. 585, 589-590 (1962).

redactada en inglés; que el contenido de dichas advertencias era de conocimiento del demandante; y que éste, a sabiendas, hizo un uso inadecuado del producto, lo que ocasionó la explosión. Continuó alegando que el demandante no leyó las instrucciones o advertencias impresas en la batería ni la información entregada durante la venta, como tampoco hizo gestiones para que se las tradujeran o se las explicaran, por lo que su ignorancia era atribuible solamente a su propia conducta.

La vista para determinar responsabilidad se celebró los días 19 y 20 de agosto de 1991, continuando el 10, 11 y 12 de junio de 1992.[4] Vista y evaluada la prueba, el tribunal de instancia resolvió que Sears tenía la total responsabilidad de los daños sufridos por los demandantes a raíz de la explosión de la batería.[5] Declaró también que Sears procedió con temeridad durante la litigación del caso. Concluyó que los avisos sobre la peligrosidad del producto eran insuficientes aun para un angloparlante, ya que no existía advertencia alguna en la batería sobre la

---

[4] Mediante estipulación las partes acordaron que el juicio se ventilaría en dos etapas: en la primera se haría una determinación en cuanto a responsabilidad, mientras que en la segunda se fijarían los daños sufridos sólo de haber mediado una determinación previa de responsabilidad.

[5] Determinó el tribunal de instancia: "[e]sta batería tiene impreso, sobre su parte superior y en uno de sus lados, en letras al relieve las palabras Sears Die Hard de lo que podemos inferir que Sears ordenó la fabricación de las mismas bajo sus especificaciones o al menos el fabricante las produjo especialmente para Sears. Evidencia presentada por la demandada demostró que las baterías salen directamente de la fábrica con tales inscripciones."

posibilidad de que con sólo mover los conectores de los polos en circunstancias como la del caso de autos podía producirse la referida explosión. No obstante, añadió que el demandante no pudo conocer del peligro que su conducta podía ocasionar porque las advertencias sobre la posibilidad de una explosión estaban en inglés.

Inconforme con dicho dictamen, Sears acudió mediante recurso de revisión en el que alegó cuatro errores:

> Erró el Tribunal de Instancia al concluir que la insuficiencia en las advertencias de la batería era la causa adecuada de los daños sufridos por los demandantes.

> Erró el Tribunal de Instancia al concluir que las advertencias de la batería eran inadecuadas para advertir al demandante de los peligros de una explosión.

> Erró el Tribunal de Instancia al eximir de toda responsabilidad al demandante.

> Erró el Tribunal de Instancia al concluir que la demandada fue temeraria en la litigación de este pleito.

En lo que concierne al último error, la parte demandada cuestiona la imposición de mil quinientos dólares ($1,500) por concepto de honorarios de abogado, arguyendo que sólo ejerció su derecho legítimo a defenderse de una reclamación sobre la cual existía una controversia sustancial en términos de derecho y que sus actuaciones durante el litigio no reflejan conducta temeraria.

De otra parte, mediante recurso de certiorari Sears cuestionó la determinación del tribunal de instancia denegando su moción solicitando la aprobación del memorando de costas. Sostiene la parte demandada que debieron

concederse las costas reclamadas conforme a lo resuelto por este Tribunal en J.T.P. Dev. Corp. v. Majestic Realty Corp., Op. de 6 de mayo de 1992, 130 D.P.R. ____ (1992), 92 J.T.S. 53, por existir en el presente caso dos causas de acción independientes: una por defectos de manufactura de la batería y otra por insuficiencia de las advertencias. Aduce que para establecer cada una de estas causas de acción se requieren distintos elementos y que fue para la defensa de la reclamación por defectos de manufactura que Sears incurrió en gastos de peritaje y deposiciones. Añade que la reclamación por insuficiencia de las advertencias descansó en otros elementos de prueba y en la aplicación del derecho a unos hechos básicos que no requerían el análisis de un perito.

Consolidamos ambos recursos y procedemos a revisar.


II.  RESPONSABILIDAD ABSOLUTA EXTRACONTRACTUAL

En nuestra jurisdicción aplica la norma de responsabilidad absoluta del fabricante o vendedor por daños causados por productos defectuosos o peligrosos.[6] Rivera et al. v. Superior Pkg., Inc. et al., Op. de 9 de diciembre de 1992, 132 D.P.R.____ (1992), 92 J.T.S. 165; Montero Saldaña

---

[6] Nuestro Tribunal acogió la doctrina de que todos los que intervienen en la cadena de fabricación y distribución responden solidariamente con el fabricante ante el perjudicado. Montero Saldaña v. American Motors, Corp., 107 D.P.R. 452 (1978); Ferrer v. General Motors Corp., 100 D.P.R. 246 (1971). Véase al respecto H. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, San Juan, Pubs. J.T.S., 1986, Vol. II, Cap. XVI, pág. 906.

v. <u>Amer. Motors Corp.</u>, 107 D.P.R. 452 (1978); <u>Mendoza</u> v.
<u>Cervecería Corona, Inc.</u>, 97 D.P.R. 499 (1969). Bajo esta
norma, el demandante tiene que probar que el producto era
defectuoso y que el defecto le ocasionó un daño. Esto es,
tiene que demostrar que el producto defectuoso fue la causa
legal de las lesiones sufridas. <u>Rivera et al.</u> v. <u>Superior
Pkg., Inc. et al.</u>, supra, pág. 10163; H. Brau del Toro, <u>Los
daños y perjuicios extracontractuales en Puerto Rico</u>, San
Juan, Pubs. J.T.S., 1986, Vol. II, Cap. XVI, págs. 896-897 y
906. Sin embargo, el perjudicado no tiene que probar la
negligencia del fabricante. <u>Rivera et al.</u> v. <u>Superior Pkg.,
Inc. et al.</u>, supra.[7] Ahora bien, el fabricante no es
asegurador de todos los daños que puedan ser ocasionados por
sus productos. <u>Mendoza</u> v. <u>Cervecería Corona</u>, supra, pág.

---

[7] En su alegato, Sears solicitó que reconsideráramos
la norma de responsabilidad absoluta en los casos de
advertencias o instrucciones insuficientes, de manera que
sea de aplicación el criterio de negligencia del fabricante
o vendedor. No procede su petición. En <u>Rivera et al.</u> v.
<u>Superior Pkg., Inc. et al.</u>, supra, en la nota al calce 4,
señalamos que la doctrina de responsabilidad absoluta del
fabricante fue adoptada por vía jurisprudencial para llenar
una laguna de nuestro ordenamiento; que hemos desarrollado
dicha doctrina caso a caso; y que sería deseable que nuestra
Asamblea Legislativa recopile, incorpore, adopte y
desarrolle un derecho propio en el campo de la
responsabilidad del fabricante. Además, destacamos que por
razones de política pública la teoría de responsabilidad
absoluta omite el requisito de la negligencia del demandado.
Estamos conscientes de que existen diversas posiciones al
respecto. Sin embargo, hasta que el legislador no se
exprese, mantendremos esta norma ya que la misma ofrece
mayor protección al consumidor. A su vez, en nuestro
ordenamiento, el demandado no está desprovisto de protección
ya que también acogimos el concepto de graduación de culpa
en los casos de responsabilidad absoluta del fabricante o
vendedor. <u>Montero Saldaña</u> v. <u>Amer. Motors Corp.</u>, supra,
págs. 463-465.

512. Será responsable de los daños sufridos por el demandante cuando éste haya utilizado el producto para un uso razonablemente previsible. Rivera et al. v. Superior Pkg., Inc. et al., supra, pág. 10164. También, hemos determinado que, en los casos donde se impone responsabilidad extracontractual bajo la doctrina de responsabilidad absoluta, es de aplicación la norma de la graduación de la culpa. Montero Saldaña v. Amer. Motors Corp., supra, págs. 463-465.

Quedan incluidos en la doctrina de responsabilidad absoluta del fabricante, los defectos de fabricación del producto,[8] los defectos de diseño del producto,[9] y los defectos por la insuficiencia en las advertencias o instrucciones del producto.[10]   Rivera et al. v. Superior

---

[8] Esto se refiere a cuando un producto falla en igualar la calidad promedio de productos similares, por lo que el fabricante responde por los daños resultantes de las desviaciones de la norma. Rivera et al. v. Superior Pkg., Inc. et al., Op. de 9 de diciembre de 1992, 132 D.P.R. _____ (1992), 92 J.T.S. 165, pág. 10164; Montero Saldaña v. Amer. Motors Corp., 107 D.P.R. 452, 512 (1978).

[9] Esto se refiere a cuando un producto falla en comportarse en forma tan segura como un usuario ordinario esperaría al usar el producto para el uso para el cual es destinado o para el cual previsiblemente podría ser usado, o cuando el diseño del producto es la causa próxima de los daños y la parte demandada no demuestra que en el balance de intereses los beneficios del diseño en cuestión sobrepasan los riesgos de peligro inherentes en el diseño. Rivera et al. v. Superior Pkg., Inc. et al., supra.

[10] Las advertencias informan al consumidor o usuario de un producto sobre los peligros del mismo. Las instrucciones describen el procedimiento que debe seguirse para utilizar un producto de forma efectiva y segura. Las advertencias pueden ser adecuadas mientras que las instrucciones pueden ser deficientes o viceversa. American Law of Products Liability, Rochester, N.Y., The Lawyers Co-

Pkg., Inc. et al., supra, pág. 10164; Montero Saldaña v. Amer. Motors Corp., supra, págs. 461-462; Brau del Toro, op. cit., pág. 901.

En Rivera et al. v. Superior Pkg., Inc. et al., supra, expresamos que un producto es considerado defectuoso "si el fabricante o vendedor no le ofrece al usuario o consumidor aquellas advertencias o instrucciones que sean adecuadas en torno a los peligros o riesgos inherentes en el manejo o uso del producto." Añadimos que "[d]icho deber se extiende a todos los usos del producto que sean razonablemente previsibles para el fabricante."

Un producto es defectuoso porque las advertencias o instrucciones que ofrece el fabricante son insuficientes o inadecuadas: (1) cuando los riesgos de uso del producto no son aparentes ni anticipables por los usuarios o consumidores; (2) en el caso de productos inevitablemente peligrosos aunque sean útiles; o (3) cuando no se corrobora la efectividad de los avisos o instrucciones. Brau del Toro, op. cit., pág. 904.

Los objetivos al ofrecer información y advertencias sobre un producto son: (l) facilitar que el consumidor lo utilice sabiamente, reduciendo el riesgo de una posible lesión, y (2) promover la autonomía individual en el proceso decisional sobre la adquisición del producto. W. P. Keeton, D.G. Owen, J.E. Montgomery, Products Liability and Safety,

---

Operative Co., 3$^{ra}$ ed., 1987, Sec. 32:20, págs. 41-42.

Minneola, N.Y., The Foundation Press, Inc., 1980, págs. 294-295.

La obligación del fabricante de ofrecer instrucciones y advertencias sobre un producto incluye, entre otros, el deber de (1) ofrecer instrucciones sobre el manejo del producto; (2) advertir sobre posibles riesgos en el uso del producto, ya sean latentes u ocultos; (3) alertar sobre las consecuencias dañinas que pueden surgir al utilizar el producto de forma incorrecta; y (4) ofrecer instrucciones sobre la forma de evitar lesiones, así como instrucciones sobre el tratamiento de primeros auxilios en caso de una lesión. J.S. Allee, Products Liability, Nueva York, Law Journal Seminars-Press, 1991, Sec. 4.06.

Lo esencial es determinar si la información provista por el fabricante o vendedor fue adecuada, tomando en cuenta la naturaleza del producto y sus posibles usos. Id. Además, es necesario determinar si el fabricante sabía o debió haber sabido del peligro o riesgo envuelto. Rivera et al. v. Superior Pkg., Inc. et al., supra. La responsabilidad del fabricante depende de si las deficiencias de las advertencias o instrucciones convirtieron el producto en uno irrazonablemente peligroso, o sea, más peligroso que lo que esperaría un consumidor ordinario. M. Stuart Madden, The Duty to Warn in Products Liability Contours & Criticism, 89 West Virginia Law 221, 222 (1987); Restatement (Second) of Torts, Sec. 402A, comentario i (1965).

En resumen, existen cuatro elementos básicos para determinar si el fabricante cumplió o no con el deber de ofrecer advertencias o instrucciones apropiadas: (1) el fabricante sabía o debió haber sabido del peligro inherente del producto; (2) no incluyó advertencias o instrucciones, o éstas no fueron adecuadas; (3) la falta de advertencias convirtió el producto en uno inherentemente peligroso; (4) la falta de instrucciones o advertencias apropiadas fue la causa próxima de las lesiones del demandante. Allee, op. cit., Sec. 4.02.

Para determinar si las advertencias o instrucciones de un producto son adecuadas se debe examinar el tamaño, lugar e intensidad del lenguaje o símbolo utilizado, a la luz de la forma y del contenido del mismo. Las advertencias o instrucciones deben estar diseñadas en un lenguaje directo, para impresionar a un usuario prudente y razonable del producto, alertándolo sobre la naturaleza y amplitud del peligro envuelto. Stuart Madden, op. cit., pág. 223.

Además, se tiene que analizar la naturaleza del peligro envuelto, la forma en que se utiliza el producto, la carga económica que se impone al fabricante al requerirle incluir instrucciones o advertencias, y la probabilidad de que una advertencia en particular alertará adecuadamente a los usuarios o consumidores sobre los riesgos que representa el uso del producto, ya sea correcta o incorrectamente. El contenido de las advertencias debe ser comprensible para el promedio de los consumidores. Id., pág. 311. Esto requiere

que las advertencias e instrucciones provistas por el fabricante de un producto trasciendan barreras de lenguaje.[11]

En fin, el análisis sobre la adecuacidad de las advertencias y/o instrucciones debe realizarse a la luz del conocimiento o la experiencia de aquéllos que razonable y previsiblemente utilizarán un producto determinado. Si el consumidor promedio no puede razonablemente anticipar y apreciar cabalmente las condiciones peligrosas de un producto o el riesgo a una lesión por su uso, el fabricante debe advertir del mismo. A la inversa, un fabricante no tiene que anunciar un peligro si el consumidor promedio ordinariamente tiene conocimiento de los peligros del producto. American Law of Products Liability, supra, Sec. 32:61, págs. 101-105.

Ahora bien, bajo la doctrina de responsabilidad absoluta del fabricante, el hecho de que el peligro o riesgo al utilizar una batería de automóvil sea obvio, por ser uno

---

[11] Sobre el problema del idioma en las advertencias y/o instrucciones de los productos, véanse: L.M. Baldwin, Ramírez v. Plough, Inc.: Should Manufacturers of Nonprescription Drugs Have a Duty to Warn in Spanish?, 29 University of San Francisco L.R. 837 (1995); T.H. Lee, A Purposeful Approach to Products Liability Warnings and Non-English-Speaking Consumers, 47 Vanderbilt L.R. 1107 (1994); R. Geoffrey Dillard, Multilingual Warning Labels: Product Liability, "Official English," and Consumer Safety, 29 Georgia L.R. 197 (1994). C.S. Maciejewski, The Dilemma Over Foreign Language Labeling of Over-the-counter Drugs, 15 Journal of Legal Medicine, marzo, 1994, págs. 129-154; G. Sargeant, Drug Company Disputes Need for Warnings in Spanish, 29 Trial, agosto, 1993, pág. 91; S.B. Goldberg, Product Liability; Should Warnings be Bilingual, 79 ABA Journal, enero de 1993, pág. 83.

inherente al mismo, no necesariamente excluye la indemnización por daños. Una advertencia puede reducir el riesgo de daños o lesiones aun cuando se trate de la utilización de productos inherentemente peligrosos. American Law of Products Liability, supra, Sec. 32:64, págs. 109-110. Le corresponde al juzgador de los hechos examinar si, a la luz de la totalidad de las circunstancias, el aviso fue adecuado, si fue la causa próxima de los daños del demandante y si no hubo una causa interventora o concurrente.[12]

III.  APLICACION DE LA DOCTRINA

Las baterías de automóviles son productos inherentemente peligrosos. La posibilidad de que éstas exploten, causando lesiones severas y permanentes, ha sido reconocida desde hace algún tiempo, tanto por la industria privada como por el Gobierno.[13] De hecho, a partir de los años setenta, los fabricantes de baterías se dieron a la tarea de mejorar los diseños y de incluir advertencias para alertar a los usuarios sobre el peligro de explosión y las formas de evitar lesiones. Este esfuerzo se debió, en parte, a los nuevos reglamentos federales promulgados por el National Highway Traffic Safety Administration (N.H.S.A.) y

---

[12] Véanse, por ejemplo: East Penn Mfg. Co. v. Pineda, 578 A. 2d 1113 (D.C. App. 1990); Rhodes v. Interstate Battery System of America, 722 F.2d 1517 (11mo. Cir. 1984).

[13] Anualmente se reportan miles de explosiones de baterías de automóviles. G.A. Peters, Battery Explosions: Cause and Cure, Part II, 18 Trial, julio, 1982, pág. 100.

el Consumer Product Safety Commission (C.P.S.C.). J. Armino, <u>Automobile Batteries – An Explosive Situation</u>, 17 Trial, diciembre, 1981, pág. 54. Sin embargo, aun con los nuevos diseños y advertencias, las explosiones de baterías siguen siendo una amenaza para el público. <u>Id.</u>; G.A. Peters, <u>Battery Explosions: Cause and Care</u>, 18 Trial, julio, 1982, pág. 100; A. Blum, <u>Exploding Batteries Spur Suits</u>, 11 The National Law Journal, 6 de marzo de 1981, pág. 3. De manera que, la efectividad de las advertencias e instrucciones en las baterías no ha quedado claramente establecida. <u>Id.</u>

En el caso de autos, la responsabilidad absoluta impuesta a Sears por el tribunal de instancia se fundamentó en la insuficiencia e inadecuacidad de las advertencias para el manejo de la batería de automóvil, por lo que constituye un producto defectuoso. Entendió dicho foro que "en ninguna parte de la batería ni en los documentos entregados con ésta al demandante [aparecían] advertencias –ni siquiera en el idioma inglés– sobre que tocar o mover los conectores de los polos [podía] ocasionar una explosión y causarle daños".

En síntesis, la prueba pericial sirvió para establecer que al intentar la señora Pérez Guadalupe encender el automóvil, luego que el demandante moviera los conectores de los polos de la batería, se produjo un arco o chispa eléctrica que incendió los gases que produce normalmente la batería, ocurriendo de esta forma la explosión; que la

actuación del demandante al mover los conectores de los polos de la batería cuando el automóvil no incendió representa lo que cualquier persona promedio hubiese hecho en circunstancias similares; y que las circunstancias en que ocurrió la explosión son de conocimiento en la industria manufacturera de baterías.[14]

Al tomar en consideración la prueba pericial, es forzoso concluir que el conocimiento del fabricante sobre el peligro o los riesgos envueltos en circunstancias como la del caso de autos, unido al hecho de que cualquier persona promedio hubiese movido los conectores de los polos de la batería en esas mismas circunstancias, imponían al fabricante el deber de advertir a estos efectos. Veamos si se cumplió con este deber.

La parte superior de la batería que explotó tenía dos tapas. Cada tapa medía 3 3/4 pulgadas de ancho por 4 pulgadas de largo y tenían, en relieve, una serie de advertencias e instrucciones relacionadas al manejo de la batería.

La tapa izquierda tenía instrucciones sobre el procedimiento para cargar la batería:

CAUTION

(1) When using jumper cables between negative grounded batteries. Connect ends of one cable to positive (+) terminal of each battery.

---

[14] Nos referimos a la prueba vertida por el perito de la parte demandada, con experiencia por más de cuarenta (40) años como manufacturero, gerente o consultor de baterías, quien tiene a su haber tres (3) patentes de baterías.

(2) Connect one end of other cable to negative (-) terminal of 'Good' battery.

(3) Connect other end of cable to engine block on vehicle being started. (Not to negative (-) terminal of battery).

(4) Reverse procedure when disconnecting.

Note: If either or both batteries are positive (+) grounded. See Vehicle Owner's Manual for instructions or seek service assistance.

La tapa derecha tenía advertencias relacionadas con el peligro de explosión por causa de alguna chispa, llama o cigarrillo y el hecho de que las herramientas y las grampas de los cables (<u>cable clamps</u>) podían ocasionar chispas. También advertía sobre la posible pérdida de visión en caso de explosión. Específicamente disponían:

DANGER - EXPLOSIVE

Can cause blindness or severe injury. Protect eyes. Sparks. Flames. Cigarettes can cause explosion: Tools and cable clamps can cause sparks. Do not use without instruction. Keep vent caps tight and level.

ACID - POISON

Causes severe burns. Contains sulfuric acid. In event of contact flush with water and see a doctor. Keep out of reach of children.

Los textos transcritos que aparecían en las tapas de la batería advertían en términos generales del peligro inherente del producto; ofrecían instrucciones sobre el procedimiento para cargar la batería; aconsejaban al usuario leer el manual de instrucciones o buscar ayuda técnica en relación a cómo cargarla en determinadas circunstancias; instruían mantener las tapas de la batería selladas; y ofrecían instrucciones sobre el tratamiento de primeros

auxilios en caso de una lesión. De todo esto, surge claramente que las advertencias no incluían información alguna sobre el peligro de mover los conectores de los polos de la batería, justo antes de intentar encender el vehículo. Tampoco existían instrucciones respecto a la distancia prudente que debía guardar una persona que estuviera en las proximidades del automóvil al intentarse encender el vehículo luego de moverse los conectores de los polos de la batería, lo cual hubiera evitado lesiones.

De otra parte, los riesgos específicos asociados con el manejo de los conectores de los polos de la batería no eran previsibles ni anticipables por usuarios o consumidores ordinarios. En particular, no se presentó evidencia de que el demandante conociera o debiera conocer de los riesgos específicos asociados al manejo de la batería. Tampoco la parte demandada estableció que el demandante fuera un experto en baterías. Su experiencia previa con baterías de automóvil era la de un conductor usual. Sobre este particular, cabe precisar que el conocimiento requerido para eximir al fabricante o vendedor de su deber de advertir es el conocimiento de un experto. American Law of Products Lialibity, supra, sec. 32:76, pág. 127. Así pues, el desconocimiento del demandante sobre los riesgos específicos envueltos hace inaplicable la norma de asunción del riesgo.

Conviene señalar que el hecho de que el demandante no leyera las instrucciones resulta inmaterial a la solución del presente caso. Cuando se incumple el deber de informar

adecuadamente, el que el demandante no lea las advertencias o instrucciones no debe ser óbice para descartar la reclamación por daños.[15] Aunque el demandante sí sabía que la batería era un producto peligroso y explosivo, las advertencias de la batería fueron inadecuadas por omitir hacer referencia a los riesgos relacionados al manejo de los conectores de los polos de ésta. Esta omisión convirtió la batería en un producto irrazonablemente peligroso, lo cual se convirtió en la causa próxima del accidente.


IV.    LOS HONORARIOS DE ABOGADO Y LAS COSTAS A LA PARTE PERDIDOSA

A. Ciertamente, la conclusión de que un litigante fue temerario descansa en la sana discreción del tribunal sentenciador. Raoca Plumbing v. Trans World, 114 D.P.R. 464, 468 (1983). Sin embargo, tras examinar los factores que tomó en consideración el tribunal de instancia para hacer la determinación de temeridad, concluimos que le asiste la razón al recurrente cuando insiste en que no procedía la imposición de honorarios por temeridad.[16]

---

[15] Véanse, por ejemplo: East Penn Mfg. Co. v. Pineda, 578 A. 2d 1113 (D.C. App. 1990); Rhodes v. Interstate Battery System of America, 722 F.2d 1517 (11mo. Cir. 1984).

[16] El tribunal de instancia determinó que la parte demandada actuó de forma temeraria en la litigación de este pleito, señalando que ésta negó varios párrafos de la demanda enmendada, ya que la información obtenida en el descubrimiento de prueba, realizado al momento de la enmienda, y el informe del perito de Sears obligaban a ésta a aceptar lo alegado en esos párrafos. Además, el tribunal de instancia indicó que la parte demandada no presentó prueba para fundamentar la alegación de la defensa de prescripción. Finalmente, concluyó que factores tales como

"El propósito principal de autorizar la imposición de honorarios de abogado en casos de temeridad, es la de establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713, 718 (1987). No encontramos que las acciones de la parte demandada recurrente promovieran un pleito que se pudo evitar o lo prolongaran innecesariamente haciendo que la otra parte incurriera en gestiones evitables. Fernández v. San Juan Cement Co., Inc., supra, págs. 718-719. La parte demandada no tenía que aceptar alegaciones sobre las cuales versaba la controversia fundamental del caso. Además, este caso versa sobre la responsabilidad del vendedor o fabricante por razón de la insuficiencia de advertencias, cuestión que por haber tenido poco acceso a la jurisprudencia nos lleva a concluir que la parte demandada no incurrió en temeridad punible.

A la luz de las anteriores consideraciones, procede revocar la imposición de honorarios de abogado por conducta temeraria.

---

la naturaleza y duración del caso, las controversias envueltas en el mismo, y el tiempo y actividad profesional invertidos, obligan a la recurrente a satisfacer a los demandantes, la suma de mil quinientos dólares ($1,500) en honorarios de abogado más el interés legal sobre la suma de los daños, a computarse a partir de la fecha de la presentación de la demanda.

B.    La Regla 44.1(a) de Procedimiento Civil, 32 L.P.R.A. Ap. III, tiene una función reparadora.  El propósito es resarcir a la parte victoriosa los gastos necesarios y razonables incurridos durante el litigio.  La imposición de costas a la parte vencida es mandatoria.  El tribunal, conforme a la Regla 44.1(a), supra, determinará quién fue el litigante vencedor y cuáles gastos fueron necesarios y razonables.  Es posible que distintas partes en el pleito salgan victoriosas en una o algunas de las reclamaciones acumuladas.  J.T.P. Dev. Corp. v. Majestic Realty Corp., supra, pág. 9469.  Por ejemplo, en el caso citado existían dos reclamaciones independientes:  una de reivindicación y otra por daños y perjuicios.  La reclamación por daños y perjuicios fue declarada con lugar mientras que la reivindicación no prosperó.  En la primera J.T.P. resultó ser la parte victoriosa, mientras que Majestic venció en la reivindicatoria.

El caso de autos no presenta el mismo cuadro.  Es claro que la parte demandante sólo tiene una reclamación por daños causados a raíz del manejo de un producto defectuoso.  La determinación fue a los efectos de que el producto era defectuoso por insuficiencia e inadecuacidad de las advertencias.  Sin embargo, la doctrina de responsabilidad absoluta del fabricante o vendedor tiene tres modalidades:  responsabilidad por defectos de fabricación del producto, defectos del diseño del producto y defectos por la insuficiencia en las advertencias o instrucciones del

producto. Aunque un producto no tenga defecto de fabricación o diseño, puede ser considerado defectuoso por falta de las advertencias o instrucciones acerca de los peligros inherentes en el uso o manejo del mismo. <u>Rivera et al.</u> v. <u>Superior Pkg., Inc. et al.</u>, supra. El tribunal de instancia concluyó que la responsabilidad de la parte demandada descansaba en la insuficiencia de las advertencias o instrucciones del producto. Consideró el testimonio pericial para evaluar todas las reclamaciones necesarias para poner fin al pleito. La parte demandante resultó ser la vencedora y por lo tanto, no corresponde a Sears recibir reembolso alguno por concepto de costas.

Por los fundamentos antes expuestos, se dictará sentencia confirmando la sentencia parcial emitida por el entonces Tribunal Superior, Sala de Ponce, en cuanto a la determinación de responsabilidad absoluta del demandado por los daños causados al demandante por la explosión de la batería. Como resultado del disenso parcial del Juez Asociado señor Fuster Berlingeri, los disensos totales de los Jueces Asociados señores Negrón García y Rebollo López y la no intervención del Juez Asociado señor Corrada Del Río, se confirma aquella parte de la sentencia parcial imponiendo honorarios de abogado por temeridad, por estar igualmente dividido el Tribunal. Se devuelve el caso al tribunal de Primera Instancia, Sala Superior de Ponce, para que continúe con los procedimientos en forma compatible con esta Opinión.

RE-92-436                                    **¡Error!Marcador no definido.**

MIRIAM NAVEIRA DE RODON
Juez Asociada

RE-92-436
CE-92-537

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Andrés Aponte Rivera, etc.


Demandantes-recurridos

|  |  | RE-92-436 |
| --- | --- | --- |
| v. |  | CE-92-537 |


Sears Roebuck de P.R., Inc.


Demandado-recurrente


SENTENCIA


San Juan, Puerto Rico, a 24 de febrero de 1998


Por los fundamentos antes expuestos, se dicta sentencia confirmando la sentencia parcial emitida por el entonces Tribunal Superior, Sala de Ponce, en cuanto a la determinación de responsabilidad absoluta del demandado por los daños causados al demandante por la explosión de la batería. Como resultado del disenso parcial del Juez Asociado señor Fuster Berlingeri, los disensos totales de los Jueces Asociados señores Negrón García y Rebollo López y la no intervención del Juez Asociado señor Corrada Del Río, se confirma aquella parte de la sentencia parcial imponiendo honorarios de abogado por temeridad, por estar igualmente dividido el Tribunal. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Ponce, para que continúe con los procedimientos en forma compatible con esta Opinión.

Lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión de Conformidad en parte y disidente en parte. El Juez Asociado señor Negrón García emitió Opinión Disidente, a la cual se unió el Juez Asociado señor Rebollo López. El Juez Asociado señor Corrada Del Río no intervino.

Carmen E. Cruz Rivera
Subsecretaria General

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

ANDRES APONTE RIVERA, ETC.

    Demandantes-Recurridos

|  | RE-92-436 |
|---|---|
| vs. | CE-92-537 |

SEARS ROEBUCK DE P.R., INC.

    Demandado-Recurrente

Opinión de Conformidad en parte y Disidente en parte emitida por el Juez Asociado señor FUSTER BERLINGERI

San Juan, Puerto Rico, a 24 de febrero de 1998.

Estoy conforme con lo dispuesto por la mayoría en este caso, en lo que se refiere a la responsabilidad de la parte demandada por la explosión de la batería en cuestión, que causó graves daños a la parte demandante. Disiento, sin embargo, con el dictamen de la mayoría respecto a los honorarios de abogados.

El caso ante nos es realmente bastante sencillo. El demandante Aponte Rivera sufrió serios daños físicos ocasionados por la explosión de la batería de su vehículo de motor. Ello ocurrió luego de que Aponte Rivera hubiese movido con sus manos los conectores de los polos de la referida batería, debido a que su vehículo no le había encendido antes cuando intentó prenderlo. Como bien señala la mayoría en su opinión,

lo que causó la explosión de la batería fue precisamente que el demandante, por desconocimiento,

movió los polos de la batería. Aponte Rivera hizo lo que cualquier persona hubiese hecho ordinariamente de haber estado en una situación similar. El demandante actuó así porque las advertencias de la batería no indicaban que no se podían mover dichos polos. En ninguna parte de la batería, ni en los documentos entregados con ésta al demandante cuando la compró, aparecían advertencias avisándole al consumidor que mover los conectores de los polos podía ocasionar una explosión de la batería.

Sobre lo anterior, es menester resaltar que al tribunal de instancia le mereció entera credibilidad la prueba pericial aportada por la propia demandada Sears Roebuck de P.R., Inc. Conforme al perito en cuestión, un experto en baterías con más de 40 años de experiencia, la causa del accidente del demandante no fue ningún defecto de la batería sino más bien la acción de éste de mover los conectores de los polos de la batería, al no lograr encender su automóvil. Dicho perito admitió que la referida acción del demandante es lo que cualquier ciudadano promedio hubiese hecho en tales circunstancias.

En vista de lo anterior, procede imponerle toda la responsabilidad por la explosión de la batería a la parte demandada, ya que ésta había incumplido con el deber de ofrecer al usuario advertencias e instrucciones adecuadas en torno a los riesgos inherentes a la batería, conforme a los pronunciamientos normativos de Rivera Santana v. Superior Packaging, op. de 9 de diciembre de 1992, 133 D.P.R. ____, 92 JTS 165. Eso fue precisa y correctamente lo que resolvió el tribunal de instancia, que expresamente señaló que ". . . resolvemos que Sears responde por insuficiencia en el aviso dado, aún frente a un angloparlante."

Visto que el elemento decisivo en este caso es la ausencia de aviso adecuado sobre los riesgos de mover los polos de la batería, sobre el cual no hay controversia legítima alguna; y teniendo en cuenta que la determinación de si hubo temeridad es discrecional del tribunal sentenciador, no creo que el foro de instancia abusó de sus prerrogativas al imponer honorarios de abogado. En mi criterio, éste es en realidad un

RE-92-436
CE-92-537

caso común de daños y perjuicios, que se pudo haber resuelto sin grandes complicaciones litigiosas. Según surge de la sentencia del tribunal a quo, el perito de la parte demandada había intervenido como tal anteriormente en otros casos que trataban con situaciones similares a las de éste. Más aún, la parte demandada no presentó defensa afirmativa alguna en torno a la insuficiencia de las advertencias de la batería en cuestión, ni ofreció evidencia alguna que desvirtuara las alegaciones del demandante sobre la referida deficiencia en las advertencias. En tales circunstancias, la insistencia de la parte demandada en prolongar el pleito innecesariamente, justificó la imposición por el tribunal sentenciador de honorarios de abogados, con cuya determinación este Tribunal no ha debido intervenir. Por ello, aunque estoy conforme con la parte principal de la opinión de la mayoría, disiento en lo relativo a su dictamen sobre los honorarios de abogados.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

RE-92-436
CE-92-537


EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Andrés Aponte Rivera, etc.


   Demandantes-recurridos

|  |  |  |
|---|---|---|
|  | RE-92-436 |  |
| v. | CE-92-537 | Revisión |

Sears Roebuck de Puerto Rico,
Inc.


   Demandado-recurrente



Opinión Disidente del Juez Asociado señor Negrón García a la cual se une el Juez Asociado señor Rebollo López



       San Juan, Puerto Rico a 24 de febrero de 1998

                               I

       Introducción:-

            "[E]l arte del Derecho es polifónico y que, por tanto, aplicar al Derecho solamente la lógica monódica hecha para el matemático es como interpre-tar una sinfonía con un solo instrumento." M. Villey, citado en G. Rodríguez Mourullo, <u>Aplicación Judicial del Derecho y Lógica de la Argumentación Jurídica</u>, Madrid, Ed. Civitas, S.A., 1988, pág. 69.

            En estricta juridicidad y conciencia, varias razones nos impiden suscribir la opinión del Tri-bunal. **Primero**, se apuntala en una **apreciación fáctica inverosímil**, resultado del testimonio no creíble del demandante Andrés

RE-92-436
CE-92-537

Aponte Rivera, quien desde el inicio del trámite judicial

incurrió en

RE-92-436
CE-92-537

inexplicables evasivas, **múltiples contradicciones y serias mentiras**. **Segundo**, es un **dato no contradicho** –reconocido incluso por el tribunal sentenciador y este foro– que la batería Sears, Diehard (Modelo 4301), **fue bien construida** y **"no tenía defectos de manufactura que motivaran la explo-sión"**. **Tercero**, fue **instalada correctamente** el 17 de agosto de 1985 por Sears en el vehículo de Aponte Rivera después de revisarse y verificarse que los componentes del sistema eléctrico (regulador de voltaje, alternador, arranque del motor (starter), cables de la batería y correa del alterna-dor), funcionaban adecuadamente. **Durante casi tres (3) años –hasta que sucedió la explosión debido a la negligencia de su dueño Aponte Rivera– funcionó en perfectas condiciones**. **Cuarto**, el accidente **ocurrió exclusivamente por la negligen-cia crasa de Aponte Rivera**, quien conocía por experiencia el carácter inherentemente peligroso explosivo de la batería y, contra las advertencias e instrucciones expresas en el idioma inglés (**que conocía**), intervino con la misma indebida y negligentemente. **Quinto**, las advertencias principales en el idioma inglés destacadas **prominentemente** en la batería fueron más que suficientes, por tratarse de palabras familiares en uso por décadas en la economía y entorno puertorriqueño, tales como **"Danger-Explosive; Acid-Poison; Caution"**. **Sexto**, el Tribunal impone "responsabilidad absoluta" a Sears al concluir que se "requiere que las advertencias e instrucciones provistas por el fabricante de un producto trasciendan barreras de lenguaje" –(Opinión del Tribunal, pág. 12)– confirmando implícitamente el criterio del Tribunal de instancia de que aplica la Ley Núm. 233 de 23 de julio de 1974 conocida como Ley de Sustancias Peligrosas de P.R. (24 L.P.R.A. sec. 2701 et seq.). **Séptimo**, jamás ningún estudio realizado ha impuesto obligación de advertir **específicamente** sobre el posible "peligro de mover los conectores de los polos de la batería antes de intentar encender el vehículo." Tampoco en cuanto a la distancia prudente a mantenerse. (Opinión del Tribunal, pág. 16). Y **octavo**, al presente existen en el mercado y tiendas del país, **y**

**además en las carreteras, en uso vehicular, cientos de miles** de baterías que sólo contienen en el idioma inglés las advertencias precautorias similares a las del caso de autos, según requeridas por la industria manufacturera. **Como imperativo de la decisión de hoy, todas estas baterías, de un plumazo judicial, son defectuosas y sus fabricantes responsables de manera absoluta por cualquier explosión que ocurra debido al mal uso de su dueño.**

II

Alegaciones; Falsedades y Verdades:-

En su demanda **original**, como **única** causa de acción, Aponte Rivera alegó que sus daños fueron causados por **"un defecto en la manufactura de la batería"**. Especificó que explotó por Sears "distribuir y poner en el mercado **una bate-ría defectuosa y en condiciones que la hicieron estallar en el momento del accidente <u>sin</u>** que mediara ningún tipo de in-tervención negligente [de su] parte"; y que la batería fue **"construida negligentemente"**. (Enfasis nuestro). Sears contestó, negó toda responsabilidad y adujo que Aponte Rivera fue negligente.

Subsiguientemente, como parte del descubrimiento de prueba, Sears le tomó a Aponte Rivera una deposición. En la misma, declaró enfáticamente que antes del accidente levantó el bonete y pidió a su esposa que pasara al lado del conduc-tor para intentar "prender" el carro; que se puso a "chequear" el motor "solamente mirándolo"; que se situó frente al carro, "al lado contrario de la batería", que no metió la cara dentro del bonete; que **"no tocó nada allí"**. Declaró:

"P. Le pregunto si en esa inspección visual se detuvo usted a mirar si había algo con la batería.

R. Sí, yo chequié, **miré** la batería también, **todo estaba en orden.**

P. **¿Tenía las tapas puestas**?

R. **Tenía tapas puestas y todo.**

P. ¿No vio ningún cable suelto?

R. Ningún cable de ninguno.

RE-92-436
CE-92-537

P.   ¿Usted no meneó los cables de donde está el polo de la batería, ni nada de eso?

R.   **No, señor.**

P.   **¿No hizo nada de eso**, don Andrés?

R.   **No, señor.**"   (Deposición, pág. 74), énfasis suplido.

**Demás está decir que estas contestaciones (no tocó ni hizo nada y visualmente todo estaba normal), "coinciden" perfectamente con sus alegaciones en la demanda original de que la batería explotó por estar defectuosamente construida.**   Dos meses después **enmendó** la demanda, esta vez para alegar que la batería era un "producto inherentemente peligroso" pues los avisos de peligro que tenía escritos estaban "en un idioma extranjero", insuficientes e inefectivos, lo cual "constitu[ía] en sí mismo un defecto del producto".

En abierta contradicción a sus alegaciones originales y **versión bajo juramento,** la prueba demostró que Aponte Rivera intervino y movió los cables que conectan los polos de la batería.   **Conociendo por experiencia la peligrosidad inhe-rente explosiva de la batería, imprudentemente le quitó las tapas para verificar el contenido del líquido ácido y no las volvió a colocar.**   Como consecuencia, al instruir a su esposa que encendiera el auto, la emanación de los gases causó la explosión.[17]

**Ante estas realidades, es totalmente injusta la errada opinión mayoritaria que impone a Sears responsabilidad abso-luta por una supuesta falta de especificidad en las adverten-cias; más aún es jurídicamente**

---

[17] El perito de Sears –John Devitt–, a quien el tribunal de instancia **le dio total y entero crédito,** expuso, como **otra posible** explicación, que las tapas en evidencia mostraban **daño previo, no producido por la explosión** y que el gas escapó por éstas.   En particular atestó que el arrestor de llama ("flame arrestor") – sistema de seguridad que permite que la batería libere la presión de los gases que produce sin permitir la entrada de ninguna fuente de ignición– estaba deformado por el calor y, por lo tanto, no funcionó adecuadamente.   **Esa deformación no era de fábrica, sino que provino de alguien, durante su uso, haberla puesto sobre una superficie extremadamente caliente.**

**Reiteró que la batería había sido bien construida y que el daño a las tapas no vino de su manufactura, sino que fue causado en algún momento durante los tres años anteriores en que Aponte Rivera la tuvo y usó.**

Obviamente, bajo esta explicación alterna, tampoco habría ninguna responsabilidad de Sears.

RE-92-436
CE-92-537

**errónea la conclusión de que la omisión de una advertencia específica fue la "causa adecuada" de la explosión**. Profundicemos.

En su deposición, Aponte Rivera **admitió** que sabía del "peligro que acarreaba [su] actuación el día del accidente". Sabiéndolo, se descuidó y no se protegió ni tomó las mismas precauciones que adoptó para con su hijo, las que lo salvaron de sufrir daños, todo porque en ese momento, "no cre[y]ó [ni] pensó en eso, que la batería fuera a botar chispa". (Apéndice, 251). La causa adecuada de la explosión <u>no</u> fue falta de instrucciones en español o supuesta carencia de una especificidad sobre el mal uso de las tapas y de tal peligro. Repetimos, **Aponte Rivera conocía todas esas circunstancias**. Ante estas admisiones y prueba tan contundente, cómo puede la mayoría afirmar que "no se presentó evidencia de que el demandante conociera o debiera conocer de los riesgos específicos asociados al manejo de la batería." (Opinión del Tribunal, pág. 17).

Con todo respeto, incide la mayoría en una **arbitrariedad** al concluir que la ausencia de una advertencia específica fue la causa adecuada de la explosión. Por el contrario, las admisiones de Aponte Rivera demuestran que tenía conocimiento sobre los peligros resultantes del manejo de una batería, particularmente que el manipular los cables y terminales provoca chispas, y que éstas, al entrar en contacto con gases en el ambiente pueden causar una explosión. Sabía o debía saber que la batería produce gases explosivos. **Además, entendía satisfactoriamente el idioma inglés por razón de su educación, trabajo y experiencia**. Veamos.

Al ocurrir los hechos en el año 1988, Aponte Rivera tenía 43 años. Graduado de Escuela Superior, fungía como Inspector de Salud Ambiental del Depto. de Salud, donde empezó a trabajar en 1966. Como tal, participó en un programa para el exterminio del mosquito **Aedes Aegypti**, regando el insecticida conocido como **Malathion**, veneno poderosísimo capaz de matar seres humanos. Aponte Rivera admitió que conocía la peligrosidad de dicho producto, tanto en su forma líquida como en gases.

RE-92-436
CE-92-537

Recibió entrenamiento específico para desempeñarse en salud ambiental, que por voz propia, incluía todo lo que afectara salud en general y del ambiente, incluso la contaminación por químicos. Como inspector de salud ambiental, efectuaba inspecciones en todas las instalaciones o facilidades que afectan la salud pública, tales como fábricas, alimentos, restaurantes, residencias o solares. (Apéndice, 84; 139; 212-219; 130).

Se **especializó** en la inspección de fábricas y almacenes de alimentos. Durante diecinueve (19) años inspeccionó dis-tintas industrias y plantas de producción de alimentos. Por siete (7) años hizo lo propio en la National Packaging, Ponce, acompañado del Jefe de la planta, un norteamericano. (Apéndice, 132; 203-207).

**Aceptó** que conocía la **peligrosidad** de la batería en función del uso que podía darle. Sabía específicamente que **la manipulación de los cables en sus polos hace que boten chispas**; las había visto botando chispas en otras circunstancias. Conocía, por experiencia propia, que cuando se "jumpean" los carros se colocan cables en los polos y **botan chispa**. Indicó que **precisamente el que las baterías boten chispas es lo que hace pensar que la batería era en efecto peligrosa**. (Apéndice, 206-209). También, **por su experiencia, conocía que las chispas podían incendiar gases** de gasolina en un automóvil y ésta era **otra razón adicional para pensar que las baterías en un automóvil pueden ser peligrosas cuando se manipulan**. (Apéndice, 211).

Su experiencia de más de veinte (20) años como conductor, dueño y usuario de un automóvil es la razón por la cual aprendió los detalles sobre la peligrosidad de una batería, según antes descritos. (Apéndice, 226).

**Después de todas estas admisiones**, para avalar su enmienda a la demanda, Aponte Rivera alegó no tener conocimiento del idioma inglés. **No es creíble**. Contrario a ello **admitió conocer el significado de la palabra "Explosive"** desde hacía años. También lo que quería decir "voltage regulator", "alternator", "starter" y "battery cables".

RE-92-436
CE-92-537

(Apéndice, 243-245).  **Sabía que algo "explosivo" es <u>peligroso y hay que</u>** <u>**tener mucho cuidado**</u>.  (Apéndice, 230; 232-233).

Increíblemente dijo que **no había visto** la palabra "DANGER" prominentemente impresa en las tapas de la batería.  Declaró que esa palabra en la batería no le llamó la atención en lo absoluto.  (Apéndice, 231).  En la parte superior de la batería, en las tapas, están impresas dichas palabras, "Danger" y "Explosive", como parte de las advertencias ofrecidas por el manufacturero.  Además, esa información está contenida en la literatura que le fue provista por Sears con la venta.

El documento de garantía de la batería entregádole contiene las siguientes advertencias:

"WARNING

Keep out of reach of children!  Always shield eyes when working near batteries.  Know and follow safe handling procedures or obtain professional help.

POISON

CAUSES SEVERE BURNS.  Contains sulfuric acid.  Avoid contact with skin, eyes or clothing.

ANTIDOTE:  EXTERNAL – Flush immediately with water.

EYES – Flush with water for 15 minutes and get prompt medical attention.

INTERNAL – Drink large amounts of water or milk.  Follow with egg or vegetable oil.  Call physician immediately.

DANGER

EXPLOSIVE – CAN CAUSE BLINDNESS OR OTHER SEVERE INJURY. Batteries produce explosive gases.  Keep sparks, flame, cigarettes away.  Ventilate when charging or using in enclosed space.  Always shield eyes when working near batteries."

Aponte Rivera **no** leyó los documentos suministrados por Sears **con estas advertencias.**  (Apéndice, 233).  A pesar de que sus hijos y su esposa entienden el idioma inglés, **no les pidió que le explicaran su contenido.**  Tampoco le prestó atención a lo allí expresado; **ni siquiera intentó leerlo, no obstante contener en letras más grandes la palabra "Explosive"**.  (Apéndice, 111; 233-234; 241-242).

RE-92-436
CE-92-537

Es **increíble** que con cuarto año de escuela superior; licencia de conducir por más de veinte (20) años, entrenamiento por seis (6) meses sobre el uso y manejo del poderoso veneno **Malathion**, más de seis (6) años manejando dicho veneno y, sobre diez (10) años de experiencia como inspector de salud, pretenda que le creamos que desconocía lo que la palabra "Danger" quiere decir. Menos credibilidad merece que siendo conductor y habiendo residido siempre aquí, nunca haya visto esa palabra en letreros en la carretera u otros sitios, (<u>Apéndice</u>, 230–231); finalmente, es "curioso" que tal terminología en la batería no le llamara la atención.

Sin embargo, Aponte Rivera admitió saber lo que significaba "Explosive". Las palabras "gases" y "produce" son lo mismo en inglés que en español; además, aceptó saber que "battery" es **batería**. La batería Sears advertía:

> **"DANGER – EXPLOSIVE**
>
> CAN CAUSE BLINDNESS OR SEVERE INJURY. PROTECT EYES.
>
> SPARKS, FLAMES, CIGARETTE CAN CAUSE EXPLOSION: TOOLS AND CABLE CLAMPS CAN CAUSE **SPARKS. DO NOT USE WITHOUT INSTRUCTIONS. KEEP VENT CAPS TIGHT AND LEVEL.**
>
> **ACID – POISON**
>
> CAUSES SEVERE BURNS. CONTAINS SULFURIC ACID. IN EVENT OF CONTACT FLUSH WITH WATER AND SEE A DOCTOR. KEEP OUT OF REACH OF CHILDREN."  (Enfasis suplido).

Las palabras "DANGER – EXPLOSIVE" y "ACID – POISON" estaban escritas en letras anchas, muy visibles y más grandes que las demás palabras, midiendo éstas alrededor de 1/4 pulgadas. Estas advertencias cubrían todo el espacio contenido en cada una de las tapas; no sobraba espacio en la parte superior de la batería para incluir advertencias adicionales.

**Al requerirle a Sears una advertencia distinta (más específica) sobre el manejo de las tapas y polos, se abroga este Tribunal una función que pertenece a los expertos de la industria; se trata de una exigencia que ni siquiera a nivel nacional federal existe.**

Lo que nos recuerda que la "indicación de cada adverten-cia extra, diluye el impacto de cada otra advertencia. Dado al corto margen de atención, cada advertencia excluye una de la otra; se pierden en la pequeña letra ("fine print"). Si cada riesgo previsible debe incluirse, la lista final sería tan extensa que llenaría un volumen". <u>Cohen</u> v. <u>Buckeye Gas Prod. Co.</u> 840 F. 2d. 935 (D.C. Cir. 1988) (Traducción nuestra).

**El mismo Exhibit 8 (D) de Aponte Rivera, unido al final de esta disidencia, ilustra dramática y satisfactoriamente estas advertencias, su conspicuidad y pone de manifiesto su falta de credibilidad.**

La suficiencia y adecuacidad de estas advertencias es evidente. **La propia opinión mayoritaria así lo reconoce,** al afirmar que en la batería se "advertían en términos generales del peligro inherente del producto; ofrecían instrucciones sobre el procedimiento para cargar la batería; aconsejaban al usuario leer el manual de instrucciones o buscar ayuda técnica en relación a cómo cargarla en determinadas circunstancias; instruían mantener las tapas de la batería selladas; y ofrecían instrucciones sobre el tratamiento de primeros auxilios en caso de una lesión." (Opinión del Tribunal, pág. 16). **No cabe duda alguna que dichas advertencias cumplían con las directrices provistas por la Ley Federal de Sustancias Peligrosas (Federal Hazardous Substances Act, 15 U.S.C.A. sec. 1261), la cual impone la obligación de colocar avisos e instrucciones sobre los peligros y manejo de productos que contienen sustancias peligrosas.**

III

Aparte de lo expuesto, notamos que la ilustrada sala de instancia **impuso responsabilidad absoluta** a Sears al concluir que en virtud de "la Ley de Sustancias Peligrosas, Núm. 233, (24 L.P.R.A. sec. 2701, <u>et seq.</u>) las advertencias sobre el manejo de la batería tenía que estar 'escrita en español en tipo conspicuo, prominente, legible y que contraste por su

RE-92-436
CE-92-537

diseño, colocación o color con el resto del material impreso en la etiqueta'."

Se trata de una lectura fragmentada y equivocada del transcrito artículo, que agrava a posteriori –injusta e irrazonablemente–, la obligación estatutaria del demandado Sears brindar unas advertencias. El efecto práctico de esa decisión es imponerle, **sin excepciones**, responsabilidad a Sears y a todo otro fabricante, mediante unos requisitos adicionales vía jurisprudencial no contemplados por la Asamblea Legislativa. Elaboremos.

Es un error sostener que la Ley de Sustancias Peligro-sas, requiere que "cualquier información" esté en **español.** El único mandato legislativo sobre el idioma es de carácter limitado, específicamente con referencia a **cualquier informa-ción** contenida en la etiqueta sobre "[i]nstrucciones para el **manejo y almacenamiento** de **aquellos paquetes que requieren cuidado especial en relación con su manejo y almacenamiento.**"[18] (Enfasis suplido). En este caso, la batería Sears no estaba en su paquete original, tampoco almacenada, y menos en "manejo"; **sino instalada y en funcionamiento casi tres (3) años antes.**

En el contexto de este caso, fue un error de instancia conceptualizar y equiparar la palabra "manejo" con toda acción, intervención o manipulación de una batería, sobre todo **cuando ya está instalada en un vehículo.** Al examinar integralmente el texto del subpárrafo I de la Ley Núm. 233 (24 L.P.R.A. sec. 2702 (o) (1) (I)), (**único** que manda que la información esté en español), notamos las palabras "manejo y almacenamiento" unidas por la conjunción **"y".** Al explorar el resto del texto, vemos que habla de **"paquetes** que requieran cuidado especial".** Es claro que el contexto en que nos ubica dicha disposición es el **de un producto en paquete;** condición que dista mucho de ser una batería instalada. Corrobora esta interpretación la definición

---

2 La versión en el idioma inglés reza: "(i) Instructions for the **handling and warehousing of those packages requiring special care...**"

de **envase inmediato** de la Ley Núm. 233 cuyo "término no incluye los forros exteriores de los **paquetes**". Aquí, "manejo" lógicamente se refiere al traslado o movimiento de paquetes especiales que regularmente se hace, sea desde el embarque donde está la mercancía hasta su almacén, o desde éste hasta la tienda.

Si examinamos el estatuto federal sobre la misma materia, -"Law of Hazardous Substances", 15 U.S.C.A. Sec. 1261 et seq.-, cuyas disposiciones **Sears cumplió**, notamos que la sección 1261(p)(1)(I) reza: "...(I) instructions for handling and storage of packages which require special care in handling or storage". Inmediatamente, el subpárrafo 2, lee: "...on which any statements required under subparagraph (1) of this paragraph are located prominently and are in the **English language** in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on the label". (Enfasis suplido).

Mientras nuestra Ley Núm. 233 de Sustancias Peligrosas **únicamente** exige en español lo contenido en la letra (I) del subpárrafo (1) -esto es, lo pertinente al "manejo y almacena-miento de paquetes" especiales-; en contraste, la federal requiere en el idioma inglés **todo** lo consignado en el sub-párrafo (1), cuyo contenido es **idéntico** a nuestro subpárrafo (1), y entre cuyos incisos está el (I).

Esta diferencia es susceptible de dos interpretaciones. **Primero**, con vista a que ambos estatutos son virtualmente idénticos, concluir que al redactarse nuestra Ley Núm. 233, el Legislador **cometió un error tipográfico**, y su intención fue que toda instrucción o advertencia en la etiqueta fuera en español. Tendería a avalar este enfoque, que ni en su historial como tampoco Exposición de Motivos surgen razones de que nuestra Asamblea Legislativa empleó una valoración distinta del modelo federal, requiriendo sólo que apareciera en español la información pertinente a "manejo y almacena-miento de paquetes" especiales. Bajo esta conclusión, en justicia **no** podríamos imponer **responsabilidad absoluta** a Sears por incluir en el idioma inglés la información, pues

estaríamos penalizándola por un error de la Asamblea Legislativa, del cual no tuvo culpa alguna. Cualquier pronunciamiento nuestro en este sentido tendría, por imperativo, que ser **prospectivo**.

Y la segunda, resolver que no hubo el aludido error tipográfico, y que la Asamblea Legislativa quiso que únicamente se expresara en español la información e instrucción sobre "manejo y almacenamiento de paquetes" especiales. En esta alternativa, no cabría hablar de responsabilidad absoluta de Sears, pues el accidente **no ocurrió durante ese proceso**, sino ya **instalada**. No podemos olvidar que en casos de responsabilidad absoluta fundada en instrucciones y advertencias defectuosas hay que analizar, entre otros factores, **si ese defecto en las advertencias fue la causa adecuada de los daños**. Aquí no fue así. El acci-dente no ocurrió durante el "manejo y almacenamiento de un paquete", sino en un acto de intervención u operación de una batería instalada para lo cual nuestra ley **no** requiere instrucciones en español.

Bajo estas dos posibles interpretaciones, sinceramente no vemos cómo el Tribunal de instancia pudo concluir que las instrucciones eran defectuosas. Es injusto ignorar que Sears cumplió con la Ley Núm. 233. El cuadro comparativo que vía Apéndice unimos a este disenso ilustra esta afirmación. Dicha Ley **detalla** la información que debe contener la bate-ría, y especifica la instrucción que ha de estar en español. **En recta hermenéutica, si la Ley Núm. 233 se encarga de par-ticularizar qué debe estar en español, obviamente el resto puede estar en el idioma inglés.** No podría ahora este Tribunal permitir al Estado ir contra sus propios actos, invocando casos y escritos jurídicos, (Opinión del Tribunal, pág. 12; escolio 11), que propugnan que el fabricante haga un estudio de las características poblacionales para saber si debe incluir información en español. Buena o mala en su redacción, la Asamblea Legislativa estableció el contenido de la información que debía incluirse en la etiqueta, así como el idioma a redactarse.

RE-92-436
CE-92-537

**Precisamente, la falta de uniformidad y control sobre la rotulación inspiró la Ley Núm. 233.** Además confirió al Secretario de Salud el poder para, entre otras cosas, regla-mentar la rotulación. **En nuestra búsqueda investigativa no hemos encontrado reglamento alguno de dicho funcionario.**

No sería justo pues, considerar los requisitos de la Ley Núm. 233 como mínimos y, no obstante haberlos cumplido el fabricante Sears, imponerle a posteriori responsabilidad por no advertir sobre algún aspecto que, aunque no previsto por el legislador ni los expertos en la industria, **luego** un tribunal consideró necesario.

IV

Predominio del Idioma Español:-

Nuestros pronunciamientos sobre ausencia de responsa-bilidad de Sears en las circunstancias específicas del caso, no deben entenderse como ajenos a la situación lingüística en el país. **Innegable el arraigo del idioma español y su predo-minio en la comunicación e interacción diaria ciudadana.** Por herencia paterna judicial, sabemos que "[e]s un hecho no sujeto a rectificaciones históricas que el vehículo de expre-sión, el idioma del pueblo puertorriqueño -parte integral de nuestro origen y nuestra cultura hispánica- ha sido y sigue siendo el idioma español." Pueblo v. Tribunal Superior, 92 D.P.R. 596, 604 (1965).

Aún así, más allá del uso del español en los procesos judiciales, distintos esquemas legislativos en diferentes momentos y ámbitos -desde el aparato gubernamental hasta las relaciones comerciales-, con mayor o menor énfasis, han buscado la coexistencia del idioma español e inglés. En lo concerniente a productos o artículos en el comercio, en cada pieza de ley, la Asamblea Legislativa ha efectuado un par-ticular balance en virtud de los propósitos que la animan y conferido determinado peso a uno u otro lenguaje en sus dis-tintos aspectos. No hay un **criterio uniforme legislativo** que nos permita señalar a priori qué aspectos en rótulos,

etique-tas o instrucciones deben aparecer en español o inglés. Afloran distintas directrices.[19]

Aunque favorecemos criterios uniformes en el idioma español, compete a la Asamblea Legislativa y al Secretario de Salud, no este Tribunal, efectuar la valoración pertinente, plasmarla en un estatuto o reglamento, y delinear lo que son advertencias e instrucciones suficientes.

V

Ausencia de nexo causal entre el resultado dañoso y el deber de advertir:-

El Art. 1802 del Código Civil, 31 L.P.R.A. Sec. 5141 exige en toda acción bajo negligencia o de responsabilidad absoluta, establecer el nexo causal entre el daño sufrido y la conducta u omisión imputada al demandado. Rivera Santana y Otros v. Superior Packaging, Inc. y Otros, res. en 9 de diciembre de 1992; Soc. Legal de Gananciales v. G. Padín & Co., Inc., 117 D.P.R. 94, 106 (1986); Mendoza v. Cervecería Corona, Inc., 97 D.P.R. 499, 512 (1969). En una reclamación contra el fabricante por falta de advertencia sobre los peli-gros de un producto, **es imperativo establecer el nexo causal** entre el incidente que da lugar a los daños y la ausencia de esa advertencia. Rivera Santana y Otros v. Superior Packag-ing, Inc. y Otros, supra. O sea, es menester establecer la relación **entre la ausencia de advertencia –o su inadecuacidad– y el daño.**

**La mayoría descarta este principio al concluir que "resulta inmaterial" que Aponte Rivera no leyera las ins-trucciones.** (Opinión del Tribunal, pág. 17). Seguidamente afirman que "[c]uando se incumple el

---

[19] La Ley de Alimentos Comerciales para Animales Domésticos de Puerto Rico, Núm. 110 de 28 de junio de 1962, 5 L.P.R.A. secs. 554 et seq., dispone que **todo alimento comercial a ser distribuido en Puerto Rico tendrá un marbete o rótulo conteniendo la información "impresa en español o en inglés; Disponiéndose, que la información requerida en el apartado (2) deberá aparecer siempre en español, y optativamente, también en inglés o en cualquier otro idioma que desee el fabricante. La información requerida en el apartado (4) deberá aparecer también en español."** (5 L.P.R.A. sec. 557) –énfasis suplido-.

Y finalmente, la Ley de Plaguicidas de Puerto Rico, Núm. 49 de 10 de junio de 1952, 5 L.P.R.A. secs. 1001 et seq., luego de esbozar en su artículo 2 un catálogo de supuestos para considerar "falsamente rotulado" un plaguicida, confiere al Secretario de Agricultura, entre otros, el poder de **exigir el uso de los idiomas español e inglés, en los marbetes y en la rotulación de los plaguicidas y dispositivos".** 5 L.P.R.A. sec. 1005 (c), (Enfasis suplido).

deber de informar adecuadamente, el que el demandante no lea las advertencias o instrucciones no debe ser óbice para descartar la reclamación por daños". (Id.). **Este obrar judicial mayoritario transforma la responsabilidad absoluta en "responsabilidad diabólica". Trastoca el requisito de causa adecuada, y con ello, todo nuestro esquema de responsabilidad civil extra-contractual.**

En el contexto del caso de autos, **advertir es avisar de un peligro del cual no se tiene conocimiento para habilitar a la persona a adoptar las medidas necesarias para prote-gerse.** Si el peligro es obvio y generalmente conocido, nada se gana con la advertencia y ninguna es requerida. En recta lógica, la falta de advertencias o su inadecuacidad se torna fútil e inmaterial si el perjudicado conoce la peligrosidad del objeto, y como aquí, asume negligentemente el riesgo; **en esa situación no se configura el nexo causal entre el daño sufrido y el deber de advertir.**

**Aparte de la batería, sabido es que un vehículo de motor contiene innumerables piezas inherentemente peligrosas y además, que su funcionamiento necesita de varios líquidos caracterizables como inflamables o dañinos a la salud.** Un automóvil siempre exige gasolina o "diesel" en su tanque, combustibles volátiles capaces de producir una explosión por descuido o mal uso. El sistema de enfriamiento requiere un radiador lleno de agua o del líquido "coolant" que alcanza altas temperaturas. Abrir dicho radiador conlleva adoptar medidas precautorias especiales para evitar que el agua en ebullición o en forma de vapor cause quemaduras. Además, las superficies de los motores, radiadores y demás piezas generan calor suficiente como para causar graves quemaduras si hay contacto con la piel humana. Los motores utilizan abanicos y múltiples correas que requieren precauciones especiales. **Todas estas circunstancias, de ordinario son de conocimiento común. Y, claro está -con o sin advertencias en inglés o español-, su mala utilización por el dueño o conductor de un vehículo no genera responsabilidad del fabricante del automóvil, líquido o pieza.**

RE-92-436
CE-92-537

VI

Conclusiones:-

En este caso, **no existe controversia de que la batería fue bien construida, instalada y no estaba defectuosa. Unicamente la negligencia del demandante Aponte Rivera generó sus daños. Asumió voluntariamente un riesgo conocido.** No hay responsabilidad absoluta del fabricante Sears por falta o inadecuacidad de advertencias, **pues incluyó la información requerídale tanto por la ley federal como la Ley Núm. 233.** Nuestro estatuto no le vedaba hacerlo en inglés, pues éste particulariza y limita la información que debe aparecer en español -sólo referente a "manejo y almacenamiento de paquetes" especiales-.

**Independientemente de si procedía o no una instrucción en español, contrario a la lógica mayoritaria, la causa adecuada de los daños no fue esa omisión en las advertencias o su inadecuacidad, sino la actuación negligente del deman-dante Aponte Rivera. Conocía el idioma inglés de manera suficiente. Su versión de los hechos no es creíble.**

Preocupa la interpretación mayoritaria forzada que tras-ciende este inaudito caso. Su decisión de imponer **responsa-bilidad absoluta** a Sears se extiende potencialmente sobre más de millón y medio (1,500,000) de automóviles[20] que transitan por las vías públicas y además, numerosas embarcaciones[21], todas las cuales utilizan baterías.

El dictamen mayoritario significa que si cualesquiera de las cientos de miles baterías **bien construidas e instaladas** en esos automóviles y embarcaciones -que lleven impresas similares advertencias en inglés, "judicialmente hoy conside-radas deficientes"-, explotan luego de uno, dos, tres o cuatro (1, 2, 3 ó 4) años de uso, **habrá responsabilidad abso-luta del fabricante.** Para quedar liberados de esa responsa-bilidad,

---

20 El Departamento de Transportación y Obras Públicas estima que en nuestras carreteras transitan aproximadamente 1,888,000 vehículos.

21 Según cifras extraoficiales del Departamento de Recursos Naturales, hay aproximadamente 23,000 embarcaciones activas, que se desglosan en cerca de 19,000 de placer y 4,000 de pesca. Estas embarcaciones, junto a las inactivas, suman alrededor de 35,000.

Sears y los otros fabricantes de tales baterías tendrán que acudir prontamente a las tiendas donde el pro-ducto está distribuido, mejorar las instrucciones y adverten-cias sobre el manejo de las tapas y polos e imprimirlas **todas en español.** Incluso tendrán que hacer la monumental tarea de un **llamado** ("recall") para adherir esas instrucciones en español en los cientos de miles de vehículos y embarcaciones en uso.

"[E]s más fácil ser generoso que ser justo, pero nuestro sentido del deber nos impide tomar el camino más fácil si éste está reñido con la justicia." <u>Silva</u> v. <u>Comisión Industrial</u>, 91 D.P.R. 891, 904 (1965). Con todo respeto, la decisión mayoritaria dándole entero crédito a la versión del demandante Aponte Rivera e imponiéndole responsabilidad abso-luta a Sears pasará a la historia como un gran acto de "ingenuidad judicial".


ANTONIO S. NEGRON GARCIA
Juez Asociado

RE-92-436
CE-92-537

APENDICE

CUADRO COMPARATIVO

(Columna derecha contiene texto fiel y exacto del Art. 2 de la Ley Núm. 233 de 23 de julio de 1974, en español e inglés, según aprobada por la Asamblea Legislativa)

| <u>Requisitos</u> "Etiqueta Ley Núm. 233 (24 L.P.R.A. sec. 2702(o)(1)) | <u>Requisitos</u> tenía Etiqueta Batería <u>Sears</u> |
|---|---|
| "(a)  El nombre y dirección del negocio del fabricante, envasador, distribuidor o vendedor;"<br><br>"(a)  The trade name and business address of the manufacturer, packer, distributor or seller;" | "Sears Die Hard"<br>(Carecía de dirección) |
| "(b)  El <u>nombre corriente</u> o el <u>nombre químico</u>, si no tuviere nombre corriente, el de la <u>sustancia peli-grosa</u>, o el de cada uno de los componentes que contri-buyan a su condición de peligrosa a menos que el Secretario, mediante regla-mento, permita o requiera el uso de un nombre genérico reconocido;"<br><br>"(b)  The <u>common</u> or <u>chemi-cal</u> name; if it should not have a common name, the name of the dangerous substance, or the name of each and every one of the components which contribute to its dangerous condition, unless the Secretary, through regulation, permits or requires the use of the recognized generic name;" | "ACID"<br><br><br><br><br>"Sulfuric Acid" |
| "(c)  La palabra 'Peligro' en <u>letras más prominentes</u> que el resto de la etiqueta en aquellas sustancias que son sumamente inflamables, <u>corrosivas</u> o sumamente tóxicas;"<br><br>"(c)  The word 'Danger' in <u>letters more prominent</u> than those in the rest of the label in those substances that are highly inflamable, corrosive or highly toxic;" | "DANGER" |
| "(d)  La palabra 'Adverten-cia' o 'Precaución' en letras más prominentes que | |

RE-92-436
CE-92-537

| | |
|---|---|
| el resto de la etiqueta <u>en todas las otras sustancias peligrosas</u>;"<br><br>"(d) The word 'Warning' or 'Precaution' in letters more prominent than those in the rest of the label <u>in all the other dangerous substances</u>;" | <u>Inaplicable</u>; sólo el ácido sulfúrico era la sustancia peligrosa |
| "(e) Advertencias sobre el <u>peligro o de los peligros principales</u> como por ejemplo 'inflamable', 'combustible', 'vapor nocivo', 'causa quemaduras', 'absorbido a través de la piel' en letras más prominentes que el resto de la etiqueta;"<br><br>"(e) Warnings of the danger or the main dangers such as: 'inflammable', 'combustible', 'noxious vapor', 'causes burns', 'absorbed through the skin' in letters more prominent than those in the rest of the label;" | "Can Cause Blindness or Severe Injury; Sparks, flames, cigarette can cause explosion. Causes Severe Burns". |
| "(f) Medidas de precaución informando la acción a seguirse o evitarse excepto cuando por reglamento sean modificadas por el Secretario;"<br><br>"(f) Measures of precaution advising of the action to be followed or avoided, except when modified through regulation by the Secretary;" | "Tools and Cable clamps can cause <u>sparks</u>. Do not use without <u>instruction</u>. <u>Keep Vent caps tight and level</u>. Keep out of reach of children" |
| "(g) Instrucciones para tratamientos de primeros auxilios;"<br><br>"(g) First aid instructions;" | "In contact flush with water and see a Doctor" |
| "(h) La palabra 'Veneno' en letra más prominente que el resto de la etiqueta para cualquier sustancia sumamente tóxica;<br><br>"(h) "The word 'Poison' in letters more prominent than those in the rest of the label for any substance which is highly toxic;" | "POISON" |
| "(i) <u>Instrucciones</u> [<u>en Español</u>] para el manejo y almacenamiento de aquellos <u>paquetes</u> que requieran <u>cuidado especial</u> en relación con su manejo y | <u>Inaplicable</u>; batería estaba instalada y en |

RE-92-436
CE-92-537

| | |
|---|---|
| almacenamiento;"<br><br>"(i)  Instructions [in spanish] for the handling and warehousing of those packages requiring special care;" | funcionamiento por aproximadamente tres (3) años. |